BOSCO v BAUERMEISTER

Docket Nos. 104676, 104734. Argued October 7, 1997 (Calendar No. 6). Decided December 23, 1997.

The estate of Eric J. Bosco, deceased, and others were awarded damages by a jury in the Genesee Circuit Court for the wrongful death of the decedent resulting from a truck-bicycle accident. Various insurers provided coverage for the defendants. Following entry of judgment, Frederick C. Bosco, as personal representative of the estate, filed affidavits and writs of garnishment against Auto-Owners Insurance Company and USAA Casualty Company. The court, Judith A. Fullerton, J., granted summary disposition for the plaintiff and USAA, holding that there were three layers of coverage. Primary coverage was provided by Continental Insurance Company, excess "other insurance" coverage was provided by USAA and Frankenmuth Mutual Insurance Company, and "true" excess or umbrella coverage was provided by Auto-Owners and USAA, leaving primary and excess other coverage available before the umbrella policies were required to contribute. Thereafter, the court prorated liability between USAA and Auto-Owners under their umbrella policies for the portion of the judgment that exceeded the three other policy limits. The Court of Appeals, FITZGERALD, P.J., and TAYLOR and MARKMAN, JJ., reversed, concluding that Frankenmuth, Auto-Owners, and USAA were responsible pro rata for the remainder of the liability (Docket No. 146345). Auto-Owners and USAA appeal.

In a unanimous opinion by Justice BRICKLEY, the Supreme Court held:

A distinct difference exists between "true" excess insurance coverage and excess "other insurance" on the basis of the language of the policies, the difference in policy types within the insurance industry, the premiums charged for and risks assumed by the policies, and the reasonable expectations of all the contracting parties. This difference requires an excess "other insurance" policy to be exhausted before "true" excess insurance policies are required to contribute to a loss.

1. "True" excess coverage occurs where a single insured has two policies covering the same loss, but one policy is written with the expectation that the primary insurer will investigate, negotiate, and

defend claims until its limits are exhausted. Additional insurers are not "true" excess insurers. While the language of insurance policies is critical to a priority analysis, it must be construed in light of all the circumstances of each contracting party to determine the intention of each contract within the design of a consistent overall insuring scheme. In attempting to ascertain the parties' contractual intent, a court must consider the language of the policy, the character of the contract, the contract's object and purpose, and the surrounding facts and circumstances at the time of execution. The insurers' reasonable expectations should be accommodated.

2. In this case, the nature of the Frankenmuth policy and its language contradict the conclusion that Frankenmuth's reasonable expectation was that its policy was written specifically in excess of any primary policy. It is a primary policy with an excess clause triggered under certain circumstances. While it provides excess insurance in this instance, it necessarily contemplated a different and probably a greater risk than that covered by the umbrella policies. The policy would have provided primary coverage if the Continental policy did not or if an owned vehicle was involved in the accident. Further, both the Auto-Owners and USAA policies were written to be excess to any underlying insurance under all circumstances; the only policy that could be excess to either is one written specifically to be excess, which the Frankenmuth policy was not. Moreover, the Frankenmuth policy was not written to be prorated with other "true" excess insurers, while both the Auto-Owners and USAA umbrella policies contain language indicating proration with similar insurance or other insurance written to be excess of another primary policy.

3. On the basis of the language of all the policies, the insurers' reasonable expectations require that three tiers of coverage are appropriate. Under the trial court's analysis, each provision relating to excess insurance, other insurance, and proration with other policies is given meaning. The Court of Appeals analysis fails to give effect to all policy provisions and does not give the parties what they bargained for; it is inconsistent with the parties' reasonable expectations. In addition, three tiers of priority are harmonious with the nature and purpose of the policies, the risks assumed by the insurers, and the reasonable expectations of the insurers in the light of all the surrounding circumstances. An insurer's liability should be prorated on the basis of the ratio of the insurer's limits of liability to the total limits of available coverage on the loss within its tier of priority.

Reversed.

Justice TAYLOR took no part in the decision of this case.

212 Mich App 421; 539 NW2d 517 (1995) reversed.

1. INSURANCE — TRUE EXCESS INSURANCE — EXCESS OTHER INSURANCE.

Excess other insurance is to be exhausted before true excess insurance is required to contribute to a loss; a distinct difference exists between true excess insurance coverage and excess other insurance on the basis of the difference in policy types within the insurance industry, the premiums charged for and risks assumed by the policies, the language of the policies, and the reasonable expectations of all the contracting parties.

2. INSURANCE — PRORATION OF LIABILITY — TIERS OF PRIORITY.

An insurer's liability should be prorated on the basis of the ratio of the insurer's limits of liability to the total limits of available coverage on a loss within its tier of priority.

*Beltz & Associates* (by *C. Robert Beltz*) for the plaintiff.

*Thomas E. Chittle* and *Gross, Nemeth & Silverman, P.L.C.,* of counsel (by *James G. Gross*), for defendant Auto-Owners Insurance Company, Inc.

*Highland & Zanetti, P.C.* (by *Duncan H. Brown* and *J. R. Zanetti, Jr.*), for defendant USAA Casualty Company, Inc.

BRICKLEY, J.

I

In this case, we are called upon to determine the priority of coverage of several insurance policies, all of which admittedly provided coverage for the automobile accident that is the subject matter of the underlying lawsuit. We conclude that a distinct difference exists between "true" excess insurance coverage and excess "other insurance" on the basis of the difference in policy types within the insurance industry, the premiums charged for and risks assumed by the policies, the language of the policies, and the reasona-

ble expectations of all the contracting parties. This difference requires an excess "other insurance" policy to be exhausted before "true" excess insurance policies are required to contribute to a loss.[1] Thus, we reverse the decision of the Court of Appeals and reinstate the judgment of the trial court.

II

The underlying suit, upon which this matter is based, began as a wrongful death action arising from a truck-bicycle accident in which fifteen-year-old Eric John Bosco was killed. Primary defendant Chris Bauermeister was driving the truck, which was owned by primary defendant Kenneth Cook. At the time of the accident, Bauermeister was acting in the course of his employment with Flint Canvas Company and Flint Tent & Awning, Inc. The case was tried before a jury, which found in favor of the Bosco estate and the eight persons entitled to recover for the death of the decedent. Damages of $1,044,903.25 were assessed in favor of the Bosco estate, with set-offs of $556,000 from no-fault funeral benefits and two prior settlements. The net verdict was $613,569.08.

This appeal involves five insurance policies covering the various defendants in this matter: (1) Continental Insurance Company issued an automobile policy to Kenneth Cook, the owner of the truck, with a

_____

[1] USAA Casualty Company, Inc., also argued that the Court of Appeals incorrectly held that it waived its priority claim with regard to its $100,000 primary automobile policy. We need not address this issue because we reverse the decision of the Court of Appeals on the priority issue and reinstate the trial court's decision, which places the USAA primary policy in the second tier of coverage. This is the result that USAA has advocated from the beginning of this dispute.

$500,000 limit; (2) USAA Casualty Company, Inc., issued an automobile policy to Chris Bauermeister's father, which covered his son, with a $100,000 limit; (3) USAA also issued a $1,000,000 personal umbrella policy to Chris Bauermeister's father that covered his son; (4) Frankenmuth Mutual Insurance Company, Inc., issued an automobile policy to Flint Canvas with a $250,000 limit; and (5) Auto-Owners Insurance Company, Inc., issued a $1,000,000 executive umbrella policy to Kenneth Cook.

The Continental policy was previously determined to be primary by this Court in *Frankenmuth Mut Ins Co, Inc v Continental Ins Co*, 450 Mich 429; 537 NW2d 879 (1995), and is not directly involved in the present controversy. Frankenmuth filed that declaratory action to determine which insurance company was primary and, thus, responsible for the primary defendants' defense. Continental already paid plaintiff the $500,000 policy limit before trial, which was approved by the trial court. Frankenmuth settled with plaintiff for $55,000 of the $250,000 policy limit and, in exchange, plaintiff executed a covenant not to enforce judgment, which extinguished Frankenmuth's potential liability for the remaining $195,000. This settlement was also approved by the trial court. In this covenant, it was stated that no representations were made regarding the insurance coverages of the various companies involved and that the layers of coverages were undetermined at that time.

After judgment was entered, plaintiff filed affidavits and writs of garnishment against Auto-Owners and USAA. USAA voluntarily paid the $100,000 primary policy limit, and plaintiff's garnishment action continued

with regard to Auto-Owners' and USAA's liability under their umbrella policies.

USAA asserted that it was entitled to a credit against the judgment of $195,000 under its umbrella policy, that portion being Frankenmuth's unpaid policy limit. USAA paid one-half of the amount owing on the judgment in excess of $195,000 under its umbrella policy, having filed a disclosure admitting liability in part and denying liability in part. Auto-Owners initially asserted that it was not responsible for any portion of the judgment because of the bad-faith failure of the underlying insurance carriers to settle plaintiff's claims within the limits of their policies and because of contractual limitations in its policy. All parties to the garnishment action filed motions for summary disposition.

The trial court granted plaintiff's motion for summary disposition and USAA's counter motion for summary disposition, holding that there were three layers of coverage in this case: (1) the primary coverage provided by Continental ($500,000), (2) the excess "other insurance" coverage provided by USAA ($100,000) and Frankenmuth ($250,000), and (3) the "true" excess or umbrella coverage provided by Auto-Owners and USAA, each $1,000,000. Thus, there was $850,000 of coverage available before the umbrella policies were required to contribute. The trial court also held that plaintiff was not entitled to recover the $195,000 because he did not exhaust the limits of the Frankenmuth policy. Thus, the trial court's decision required that the first two layers of insurance coverage be exhausted before the umbrella policies would be required to contribute to the loss. The trial court then prorated liability between USAA and Auto-Owners

under their umbrella policies for the portion of the judgment that exceeded the three other policy limits. The Court of Appeals reversed the decision of the trial court and denied USAA's motion for rehearing.

The language contained in the various policies must be examined to properly analyze this controversy and to explain the results reached by the trial court and the Court of Appeals. The USAA primary policy contained the following pertinent language:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. *However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.* [Emphasis added.]

The Frankenmuth policy provided the following, in pertinent part:

> If the Insured has other insurance against a loss covered by Part B [residual liability agreements] of this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other valid and collectible insurance.* [Emphasis added.]

This policy also contained a Michigan employers nonowned automobile liability and hired automobile endorsement, which provided:

The insurance afforded by this endorsement shall be excess insurance over any other valid and collectible insurance available to the insured.

The personal umbrella policy issued by USAA contained the following pertinent provision:

*We provide excess liability protection for occurrences covered by primary insurance. We are responsible for the amount of loss above the limit of the applicable primary insurance* up to Policy Limit. Payment of legal and loss expenses is in addition to the Policy Limit. [Emphasis added.]

The Michigan amendatory endorsement applicable to this policy provides:

*If there is other valid and collectible insurance which covers a loss also covered by this policy, ours will be excess. However, if the other insurance is written specifically to cover as excess over the Primary Insurance limits of liability shown on the Declarations, then we will pay only our proportionate share of the loss.* [Emphasis added.]

Finally, the executive umbrella policy issued by Auto-Owners covered the amount for which the insured is liable in excess of the "[r]etained limit," which is the greater of (1) the sum of the limits of liability stated for each policy listed or insurance described in schedule A and applying to any other underlying insurance, or (2) "$250 with respect to any one occurrence not covered by other insurance." Additionally, this policy contained provisions regarding other insurance:

If other insurance covering a loss also covered by this policy is available to the insured, *the insurance afforded by this policy shall be excess of such other insurance. This*

*does not apply with respect to insurance purchased to apply excess of this policy.* [Emphasis added.]

This policy also contained a separate Michigan amendatory endorsement, which provided:

> With respect to the Other Insurance Condition, *this insurance will prorate with other similar insurance written excess of the same limits of underlying insurance.* [Emphasis added.]

The Court of Appeals, in reversing the decision of the trial court, held that the Frankenmuth policy provided primary and excess coverage in certain limited circumstances. 212 Mich App 421, 429; 539 NW2d 517 (1995). In those limited circumstances, the Frankenmuth policy provides excess insurance, "nothing more, nothing less." *Id.* at 431. The Court of Appeals further held that the Frankenmuth policy was " 'similar insurance written excess of the same limits of underlying insurance' under Auto-Owners' policy or 'other valid and collectible insurance which covers a loss also covered by [the umbrella] policy' under USAA's umbrella policy." *Id.* at 432. Finally, the Court of Appeals held that the Frankenmuth policy did not limit its excess coverage to prevent concurrent coverage by umbrella policies, and the Auto-Owners or USAA policies did not refuse contribution with policies providing such excess insurance. *Id.* The Court of Appeals concluded that the three policies were responsible pro rata for the remainder of the liability, thereby also rejecting plaintiff's argument that the Frankenmuth policy was excess to the umbrella policies. *Id.* at 434, n 3.

### III

#### A. POLICY LANGUAGE

This Court adheres to the rule that the policy language must be given effect, if at all possible. See *St Paul Fire & Marine Ins Co v American Home Assurance Co*, 444 Mich 560, 570; 514 NW2d 113 (1994). Thus, the policy language is most important in our analysis. The Court of Appeals attempted to follow this Court's mandate that "certainty and simplicity" should not be achieved at the "cost of nullifying the negotiated intent of the parties." *Bosco, supra* at 431, citing *St Paul, supra* at 577. However, the Court of Appeals analysis of the policy language failed to give meaning to all the pertinent policy language.

First, we will look to the language of the Auto-Owners policy and how its language functions with the language of the Frankenmuth policy. Auto-Owners argues that in order for the Frankenmuth policy not to be the underlying insurance, it must fit into one of two categories: (1) a policy written specifically to be excess of the Auto-Owners policy, or (2) a policy sufficiently similar to qualify for proration with the Auto-Owners policy. With regard to the first category, no evidence was presented, and no language in the Frankenmuth policy indicates, that it was purchased to be excess of the Auto-Owners umbrella policy. Plaintiff did argue in the lower courts that the Frankenmuth policy was excess to the Auto-Owners and USAA policies. The Court of Appeals rejected this argument (see *Bosco, supra* at 434, n 3), and Auto-Owners states, "there is something inherently suspect with 'reasoning' which yields the conclusion that an auto liability policy is *excess* over a multi-risk umbrella

policy purchased for a small fraction of the cost of the auto policy."

Auto-Owners maintains that its "retained limit" section contemplates that its policy is excess to any other underlying insurance, whether such underlying insurance is excess or primary. The policy also specifically states that if there is other insurance covering a loss also covered by the Auto-Owners policy, this policy is excess, unless such policy was purchased specifically to apply in excess of the Auto-Owners policy. Nothing in the Frankenmuth policy indicates that it was purchased to be excess to the Auto-Owners policy. Thus, the Court of Appeals correctly rejected the notion that the Frankenmuth policy was excess to the Auto-Owners and USAA umbrella policies.

Now we will examine the policy language to determine if the Frankenmuth policy qualifies for proration with the Auto-Owners policy. The Auto-Owners policy further provides that it will prorate with other *similar* insurance written also in excess of other underlying insurance. The Frankenmuth policy is not sufficiently similar to qualify for prorating under this clause. For example, there is nothing in the language of the Frankenmuth policy to suggest that Frankenmuth determined its rates after considering any underlying primary policies, unlike the Auto-Owners policy which specifically refers in its "retained limit" section to underlying insurance. Nothing suggests that it was written as excess over any underlying policy.

Plaintiff, in support of his contention that the Frankenmuth policy should prorate with the Auto-Owners policy, argues that if Auto-Owners intended its policy to be excess over other excess policies, it could have drafted it that way, and to do so it must contain lan-

guage that prevents prorating. However, the fact that a policy is issued as an umbrella policy at rates reflecting the reduced risk insured indicates the intent that the policy is excess over other excess policies. *State Farm Fire & Casualty Co v LiMauro*, 65 NY2d 369, 376; 492 NYS2d 534; 482 NE2d 13 (1985). Plaintiff misunderstands the basic nature of the Frankenmuth policy. It is a primary policy and has an excess clause that becomes operative in certain limited circumstances. This clause does not change the nature and function of the policy. Absent specific language in the Frankenmuth policy rendering it sufficiently similar to the Auto-Owners policy, it does not qualify for proration with it.

Now we will examine the language of the USAA policy as compared to the Frankenmuth policy. The USAA umbrella policy first provides that it is excess to any underlying insurance and then provides that, if an insurance policy is written specifically to cover as excess over the primary insurance limits, then the USAA umbrella policy will prorate the loss. This is slightly different than the Auto-Owners policy, which provides for proration with similar insurance, while the USAA policy only requires an excess policy be specifically written as excess over another primary policy.

The Frankenmuth policy excess provision was not written specifically to cover as excess over any primary policy. The USAA policy "other insurance provision" plainly states that the USAA policy will not pay contribution with any primary insurance policies, only those written as excess over primary insurance, i.e., other policies like the Auto-Owners policy, which is written specifically over underlying insurance. USAA

also notes that no evidence was presented that the Frankenmuth policy was purchased to be an umbrella policy; thus, it must be underlying insurance. The USAA umbrella policy is a "true" excess policy written as excess specifically over the USAA primary policy and all other underlying insurance, including the Frankenmuth policy. Finally, unlike the Frankenmuth policy, nothing in the USAA or the Auto-Owners umbrella policies suggests that either policy satisfies the requirements of MCL 500.3131; MSA 24.13131.[2]

Plaintiff also asserts that the Frankenmuth policy should prorate with the USAA policy. Plaintiff argues that the USAA policy defines primary insurance as those policies listed in the declaration, i.e., the USAA primary policy. Therefore, no other policy (including the Frankenmuth policy) could be underlying. However, this analysis ignores the other insurance provision in the USAA umbrella policy, and by logical extension means that USAA, under its umbrella policy, would be required to pay before Continental because that policy is not in the declarations either. This not only contradicts *Frankenmuth v Continental*, but it violates common sense.

Plaintiff's analysis is inherently flawed because the Frankenmuth policy is not written as a "true" excess policy. Only the existence of the Continental policy triggers the Frankenmuth policy "coincidental" excess coverage clause. Its basic nature—a primary automo-

---

[2] This section provides, in pertinent part: "Residual liability insurance shall cover bodily injury and property damage which occurs within the United States, its territories and possessions, or in Canada. This insurance shall afford coverage equivalent to that required as evidence of automobile liability insurance under the financial responsibility laws of the place in which the injury or damage occurs. In this state this insurance shall afford coverage for automobile liability retained by section 3135."

bile policy—does not change. The *Emcasco* court contrasted an umbrella policy, which remained as such in all circumstances except under very limited circumstances in which the policy provided primary coverage, with a primary policy with the excess clause, which provided primary coverage under almost all circumstances. *Illinois Emcasco Ins Co v Continental Casualty Co*, 139 Ill App 3d 130, 133; 487 NE2d 110 (1985). The basic purpose and nature of an insurance policy does not change, even if its coverage may change under certain limited circumstances.

Although the Court of Appeals, at the time of its decision, did not have the benefit of this Court's decision in *Frankenmuth*, it misapplied *St Paul Ins Co v American Home Assurance Co, supra. St Paul* involved three primary policies, two with pro-rata other insurance clauses and one with an excess other insurance clause. This Court adopted the majority rule that gave effect to all three clauses; the two policies with pro-rata other insurance clauses were primary and the policy with the excess other insurance clause was secondary. *Id.* at 563. Just as in *St Paul*, the excess other insurance clauses of the USAA primary policy and the Frankenmuth policy are *only* effective when other primary insurance exists, such as Continental. Otherwise, both policies would be primary, even if a nonowned vehicle was involved.[3]

The parties and the Court of Appeals noted that the present case differed from *St Paul* because this case involves the priority of secondary insurers, not pri-

---

[3] There might be circumstances in which no other primary insurance existed. This should not be the case under the Michigan no-fault insurance scheme; however, it is possible. Additionally, without any other primary insurance, the USAA policy could be primary.

mary insurers. See *Bosco, supra* at 428. This is true only in the sense that umbrella carriers are involved here and were not in *St Paul*. However, that is of little significance. The excess other insurance clauses in the Frankenmuth policy and in the USAA primary policy are just like that in the excess other insurance policy involved in *St Paul*. Thus, these policies would be primary unless a nonowned vehicle was involved or no other primary insurance existed. No difference exists between the excess other insurance clauses contained in the USAA primary policy and the Frankenmuth policy in this matter and that in the secondary policy involved in *St Paul*. The entrance of two "true" excess umbrella policies into the equation does not change the result with respect to the first two tiers of coverage.

### B. POLICY TYPE

As we held above, giving effect to the policy language is of greatest import in this analysis. However, examining the policy types involved within the insurance industry and the premiums charged for such policies is helpful in determining the contractual intent of the insurance policies as evidenced by their language. Auto-Owners and USAA argue that policies like the Frankenmuth policy, which insure a specific risk, differ in kind from umbrella policies. This difference was recognized by this Court in *Frankenmuth v Continental, supra*, which characterized umbrella insurance as "true" excess insurance and "coincidental" excess insurers, as those which, by the terms of their policies, also cover some loss arising from an insured event. *Id.* at 437. In *Frankenmuth*, this Court characterized this very policy as "coincidental" excess. *Id.*

Auto-Owners contends that this distinction is not "merely semantic. Rather, it is rooted in the fundamental differences in the nature and scope of the risks which the policies intend to cover. Those differences are reflected both in the language of the policies . . . and in the premiums charged for the risk."

This distinction also comports with the overwhelming weight of foreign authority.[4] An Illinois appellate court recognized that general differences exist between umbrella policies and primary policies with excess insurance clauses. *Emcasco, supra* at 132-133. Umbrella policies provide unique coverage, often called catastrophe coverage. *Id.* at 133, citing 8A Appleman, Insurance Law & Practice, § 4906. Where a policy is, in most instances, a primary policy, its limits should be exhausted before an umbrella policy is required to contribute. *Allstate Ins Co v American Hardware Mut Ins Co*, 865 F2d 592, 595 (CA 4, 1989).

The Court of Appeals failed to appreciate this difference in kind between the automobile coverage provided by the Frankenmuth policy and the multirisk coverage provided by the umbrella policies. The Frankenmuth policy excess coverage availability in certain circumstances does not make it "true" excess coverage like an umbrella policy because the Frankenmuth policy excess coverage is triggered *only* upon the cir-

---

[4] The majority of foreign authority supports the position of the trial court, USAA, and Auto-Owners. This was acknowledged by the Court of Appeals, which recognized the "deference given by other jurisdictions to the approach taken by the trial court and advocated by USAA and Auto-Owners." *Bosco, supra* at 431. This authority was exhaustively noted in *Liberty Mut Ins Co v Harbor Ins Co*, 603 A2d 300, 302 (RI, 1992). See also anno: *Automobile insurance: Umbrella or catastrophe policy automobile liability coverage as affected by primary policy "other insurance" clause*, 67 ALR4th 14.

cumstances of the accident, while the umbrella policies are written to be excess over *any* underlying coverage. If there had been no other primary policy, the Frankenmuth policy would have been primary, regardless of the "coincidental" excess insurance clause, unlike the USAA and Auto-Owners umbrella policies.

This Court articulated the definition of a "true" excess policy in *Frankenmuth v Continental*: " 'True' excess coverage occurs where a single insured has two policies covering the same loss, but one policy is written with the expectation that 'the primary will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted . . . .' " *Id.* at 435, n 4. This Court held that additional insurers, like Frankenmuth, are not "true" excess insurers. *Frankenmuth, supra* at 436.

The Frankenmuth policy certainly does not appear to have been written with the expectation that a primary insurer would investigate, negotiate, and defend claims. In fact, absent the circumstances of this case, the involvement of a nonowned vehicle and the existence of the Continental policy, this policy would be primary. That it might be excess in some circumstances does not change the nature of the policy. This is the very reason for distinguishing between "coincidental" excess and "true" excess. This Court recognized the significance of that distinction[5] in *Frankenmuth*.

The defining character of a "coincidental excess" policy is that liability attaches immediately upon the

---

[5] While the distinction is a function of the policy language, coincidental excess insurance clauses are virtually universal, particularly in primary automobile policies.

occurrence of the insured event. See *Frankenmuth v Continental, supra.* The Frankenmuth policy was written chiefly as a primary policy to cover residual liability losses arising out of the use of a motor vehicle. The policy states:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of: A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person; B. injury to or destruction of property, including loss or use thereof, hereinafter called "property damage"; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile. These agreements provide the Residual Liability Insurance required by Section 3131 of Chapter 31 of the Michigan Insurance Code.

As soon as the insured experiences the bodily injury or property damage described in the policy language, the carrier's liability for those losses under the policy attaches. On the other hand, under an umbrella policy, liability will never automatically attach upon the occurrence of an insured event. Rather, liability under a true excess/umbrella policy only attaches once the limits of all underlying insurance have been exhausted. That is why neither the Auto-Owners policy nor the USAA umbrella policy contains any language similar to the language cited above. Instead, both contain language stating that coverage applies to losses in excess of the "retained limit" or the "limit of the applicable primary insurance."

The New York Court of Appeals explained the effect of the "other insurance" clause in a policy similar to the Frankenmuth policy:

> The juxtaposition in that [other insurance] clause of pro-
> vision for pro rata contribution with all insurance except as
> to a nonowned automobile strongly suggests that what
> Aetna sought to achieve was an excess position with
> respect to other primary insurance covering the nonowned
> vehicle, rather than an intention to place itself on an equal
> or better footing with all other insurance excess to the pri-
> mary insurance. [*LiMauro, supra* at 376.]

On the other hand, 8A Appleman, Insurance Law &
Practice, § 4906, p 348, provides the following discus-
sion of the nature of a true excess umbrella policy:

> There is, however, a unique form of excess contract
> which always remains excess over and above all other
> applicable forms of contract, except as to the specific risks
> upon which it may elect to carry the primary burden. That
> is the umbrella or catastrophe policy. This is a needed form
> of coverage which picks up, above the limits of all other
> contracts, such as automobile and homeowners coverages,
> to give the security and peace of mind so necessary today
> where jury verdicts, or court awards, may be very substan-
> tial, to discharge the unexpected, but potentially bankrupt-
> ing, judgment. The premium is comparatively small for the
> size of the risk, so that the company cannot be expected to
> prorate with other excess coverages; and public policy
> should not demand that this be done.

Thus, the effect of the Frankenmuth excess clause
is to merely allocate liability among the primary
insurers, not to magically remove the primary nature
of the policy when a nonowned or substitute vehicle
is involved.

### C. PREMIUMS

Both Auto-Owners and USAA argue that the large
disparity in premiums demonstrates that the risk
assumed by a "true" excess carrier is more remote

from the insured event than that assumed by the primary carrier, thus reflecting the level of risk that each insurer intended to assume. The Court of Appeals addressed the premium issue in passing, also discussing the separate endorsement problem.

First, the Court of Appeals noted that even if a greater premium was paid for the Frankenmuth policy than for either umbrella policy, that price would presumably take into account both aspects of the Frankenmuth policy—the primary and the excess coverage. *Bosco, supra* at 433. This is essentially the basis of Auto-Owners' and USAA's position—the premium for the Frankenmuth policy is significantly higher for the entire risk assumed by each of the three insurers, further illustrating the difference between a primary policy with a nonowned vehicle excess clause and an umbrella policy. However, the Court of Appeals, after stating the costs of coverage should take into account the entire policy, stated that neither Auto-Owners nor USAA demonstrated that the "premium attributable to the excess insurance portion of the Frankenmuth policy is disproportionately higher than that paid for the umbrella policies." *Id.* at 433. The Court of Appeals analysis did not fully address the substance of Auto-Owners' and USAA's arguments regarding the purpose of examining the disparity in premiums.

An examination of the premiums reflects the intent that an umbrella policy serves a different function. *Emcasco, supra* at 133. The *Emcasco* court also noted that " '[t]he premium is comparatively small, for the size of the risk, so that the company cannot be expected to prorate with other excess coverages; and public policy should not demand that this be done.' "

*Emcasco, supra* at 133, quoting 8A Appleman, *supra,* § 4906, p 348.

The USAA primary policy costs $3.91 per $1,000 of coverage. The annual premium was $1,746.82, of which $390.82 or twenty-two percent, was for liability coverage. The Frankenmuth policy had an annual premium of $2,334. The Frankenmuth policy declarations do not indicate the premium charged for each separate coverage, but if the USAA automobile policy is representative, then twenty-two percent is about $500 or $2 per $1,000 of coverage.[6] The umbrella policies issued by USAA ($123.17 annual premium) and Auto-Owners ($90 annual premium) cost twelve cents and nine cents per $1,000 of coverage, respectively. This disparity, argue Auto-Owners and USAA, is even more significant than it appears because the coverage provided by the umbrella policies is not limited to automobile-related risks. The *Emcasco* court simply compared the total premiums for each policy to reveal the disparity and held it indicative of the reduced risk

---

[6] Plaintiff asserted that the Frankenmuth policy was the least expensive of all the policies because plaintiff segregated the nonowned liability coverage endorsement ($30) from the rest of the policy ($2,334 total). Auto-Owners asserts that no rational justification exists for comparing the premium charged for a *portion* of the risk assumed by Frankenmuth with the premium charged for the *entirety* of the risks assumed by Auto-Owners and USAA. This $30 additional charge appears to be for the nonowned vehicle endorsement. Liability for owned vehicles is still included within the total, separate from the additional endorsement. In other words, the nonowned vehicle coverage would not merely cost $30 in the absence of the owned vehicle coverage premium charge of $2,304. Thus, using only the $30 is not an accurate comparison to the USAA $390.82 premium for *total* liability (not the total premium) or to the premiums charged for the umbrella policies, which include total risk. Whether using the twenty-two percent method set forth by USAA and Auto-Owners is the proper method of determining the cost of coverage is debatable. However, of the two methods presented by the parties for making this determination, USAA's and Auto-Owners' seem more logical and fair. Moreover, cost of coverage, while relevant to this analysis, is not determinative.

assumed under the umbrella policy. *Id.* at 133. Whatever the method employed, the disparity in premiums is obvious and demonstrates that the umbrell<sub>ı</sub> policies were intended to cover a more remote level of risk. While not dispositive, the disparity in premiums does evidence the risk each insurer intended to assume.

### D. THE REASONABLE EXPECTATIONS OF THE CONTRACTING PARTIES

While the language of the policies is critical to tne priority analysis, as our entire analysis indicates, it should be construed in light of all the circumstances of each contracting party to determine the "intention of each contract within the design of a consistent overall insuring scheme." *Allstate Ins Co v Employers Liability Assurance Corp*, 445 F2d 1278, 1283 (CA 5, 1971). Moreover, in attempting to ascertain the parties' contractual intent, a court must consider the language of the policy, the character of the contract, the contract's object and purpose, and the surrounding facts and circumstances at the time of execution. *US Fire Ins Co v Maryland Casualty Co*, 52 Md App 269, 275; 447 A2d 896 (1982).

Auto-Owners argues that the plaintiff erroneously invokes the principle that the policy language at issue should be strictly construed against the insurer and should comport with the reasonable expectations of the insured. While such construction devices are appropriate when coverage is at issue, they have no application where the question is not the existence or extent of coverage, but priority of coverage. Construing the policies strictly against the insurers is of little use in resolving priority issues because, as Auto-Owners asserts, "construing all of the policies against

all of the insurers is not a fruitful approach to a solution." Plaintiff provides no rationale for construing the umbrella policy provisions against USAA and Auto-Owners and construing the Frankenmuth policy provisions in favor of Frankenmuth. Such a rule makes little sense in these circumstances and is virtually impossible to apply.

Instead, the insurer's reasonable expectations should be accommodated in a priority dispute, as this Court has recognized.[7] *Frankenmuth* held that requiring an excess insurer to participate pro rata on notice that the claim might exceed the primary insurer's limits effectively forces the excess insurer to be a coinsurer, despite the policy language, and such a result is contrary to the excess insurer's reasonable expectations. *Frankenmuth, supra* at 437. Additionally, this Court's holding in *St Paul* was based in part on the insurer's intent that the policy afforded only secondary coverage when the same loss was covered by other insurance. *St Paul, supra* at 568.

The nature of the Frankenmuth policy and its language contradict the conclusion that Frankenmuth's reasonable expectation was that its policy was written specifically in excess of any primary policy. It is a primary policy with an excess clause triggered under certain circumstances. While true that it is excess insurance in this instance, it "necessarily contemplated a different and probably a greater risk than that covered by the [umbrella] polic[ies]." *USAA v*

---

[7] We want to emphasize that this rule of law only applies to priority disputes. It has no place in a coverage dispute, where the rule steadfastly remains that insurance policies will be construed against the insurer and the reasonable expectations of the insured govern. Thus, an examination of the reasonable expectations of the insurer is prudent only in this limited and narrow context.

*Empire Fire & Marine Ins Co,* 134 Ariz 64, 66; 653 P2d 712 (1982). This policy would have provided primary coverage if the Continental policy did not or if an owned vehicle was involved in the accident. The overwhelming weight of authority supporting our decision to characterize the Frankenmuth policy as coincidental excess belies the conclusion that Frankenmuth reasonably expected its policy to be characterized as true excess.

Both the Auto-Owners and USAA policies were written to be excess to any underlying insurance under all circumstances; the only policy that could be excess to either is one written specifically to be excess, which the Frankenmuth policy was not. Moreover, the Frankenmuth policy was not written to be prorated with other "true" excess insurers. Both the Auto-Owners and USAA umbrella policies contain language indicating proration with similar insurance or other insurance written to be excess of another primary policy, while the Frankenmuth policy does not.

On the basis of a reading of the language of all the policies, the insurers' reasonable expectations require the conclusion that three tiers of coverage are appropriate. This is consistent with decisions of this Court and other courts that policies should be read as a whole and the negotiated intent of the parties should not be nullified. See *St Paul, supra* at 577, and *Emcasco, supra* at 133-134. Under the trial court's analysis, each provision relating to excess insurance, other insurance, and proration with other policies is given meaning. The Court of Appeals analysis failed to give effect to all policy provisions, and does not give the parties what they bargained for; in other words, it is inconsistent with the parties' reasonable

expectations. Moreover, three tiers of priority are harmonious with the nature and purpose of the policies, the risks assumed by the insurers, and the reasonable expectations of the insurers in the light of all the surrounding circumstances.

### E. PUBLIC POLICY

Lastly, reversal of this case would not chill settlement, as plaintiff argues, because by settling with Frankenmuth for $55,000, plaintiff "knowingly bargained for this litigation concerning the priority of the policies,"[8] as Auto-Owners asserts. Plaintiff's settlement with Frankenmuth was a calculated risk, and he had $550,000, regardless of the verdict. If the verdict was more, and plaintiff prevailed on the priority issue, then he would also recover an additional $195,000. However, if plaintiff did not prevail on the priority issue, then, by the terms of the covenant not to enforce judgment, that sum would not be available to plaintiff. Plaintiff, like the insurance companies, got what he bargained for.

### IV

We agree with the Court of Appeals and the trial court that an insurer's liability should be prorated on the basis of the ratio of the insurer's limits of liability to the total limits of available coverage on the loss within its tier of priority. See *St Paul, supra* at 565, n 14.

---

[8] As noted above, the covenant not to enforce judgment mentioned that no representations with regard to priority were made.

V

We conclude that the distinction between "true" excess insurance coverage and excess "other insurance" based on the difference in policy types within the insurance industry, the premiums charged for and risks assumed by the policies, the language of the policies, and the reasonable expectations of all the contracting parties requires an excess "other insurance" policy to be exhausted before a "true" excess insurance policy is required to contribute to a loss. Thus, we reverse the decision of the Court of Appeals and reinstate the judgment of the trial court.

MALLETT, C.J., and CAVANAGH, BOYLE, WEAVER, and KELLY, JJ., concurred with BRICKLEY, J.

TAYLOR, J., took no part in the decision of this case.