NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0629n.06

No. 09-1639

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Sep 28, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| LIBERTY INSURANCE UNDERWRITERS, INC., | ) ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GIBBONS, SUTTON, and WHITE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Liberty Insurance Underwriters, Inc., ("Liberty") appeals the district court's grant of summary judgment to plaintiff-appellee State Farm Fire & Casualty Co. ("State Farm"). For the following reasons, we affirm the district court's decision.

**I.**

The underlying facts of this insurance case are undisputed. In September 2005, Henry Bouma was driving a vehicle jointly leased to him and his company, Lumberman's, Inc., and accidentally struck and injured a pedestrian. The pedestrian settled her claims for $9 million. Bouma had coverage under three insurance policies. His automobile liability insurer, Old Republic, paid its $1 million policy limit as the first-line insurer without any reservation of rights and is not

a party in this case. Of the remaining $8 million, State Farm paid its policy limit of $3 million under a personal liability umbrella insurance policy issued to Bouma. Liberty paid the remaining $5 million from its $10 million commercial liability umbrella insurance policy issued to Lumberman's. State Farm and Liberty reserved their rights to seek a determination that a different allocation of liability might be required by reconciling the policy provisions.

State Farm brought an action for declaratory judgment in state court, alleging that Liberty's policy applied to the underlying settlement and that the two insurers must pay *pro rata* in proportion to their respective policy limits. Because the sum total coverage of both policies was $13 million and State Farm's coverage limit was $3 million, State Farm argued that it was liable for 3/13 of the $8 million balance remaining after Old Republic paid out its policy. Under this apportionment, State Farm sought $1,153,846 from Liberty. Liberty removed the case to federal court on the basis of diversity of citizenship and argued, in relevant part for this appeal, that it was not responsible for any payments until State Farm paid its $3 million policy limit. After unsuccessful mediation, the parties filed cross-motions for summary judgment. As described in further detail below, the district court granted in part and denied in part State Farm's motion for summary judgment and denied Liberty's motion in full. The court found Liberty liable to State Farm for $1,153,846. The district court reserved judgment on whether State Farm was entitled to seek pre-complaint interest. Adopting a proposal by the parties that reflected the partial settlement of their respective claims, the district court entered final judgment under Federal Rule of Civil Procedure 54(b), and Liberty timely appealed.

No. 09-1639
*State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*

## II.

"Questions of contract interpretation, including those that form the basis for the grant of summary judgment, are subject to *de novo* review." *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) (citation omitted). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties agree that there are no disputed issues of fact and that this appeal raises only a question of law.

"In diversity cases, this court applies state law in accordance with the controlling decisions of the Michigan Supreme Court." *Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996) (citations omitted). "If the state supreme court has not yet addressed the issue presented, we must predict how that court would rule, by looking to 'all available data.'" *Id.* (quoting *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Kingsley Assocs.*, 65 F.3d at 507.

Under Michigan law, "the policy language must be given effect, if at all possible. Thus, the policy language is most important in our analysis." *Bosco v. Bauermeister*, 571 N.W.2d 509, 513 (Mich. 1997) (internal quotation marks and citation omitted). "The parties have the right to employ whatever terms they wish, and the courts will not rewrite them as long as the terms do not conflict with pertinent statutes or public policy." *St. Paul Fire & Marine Ins. Co. v. Am. Home Assurance*

*Co.* ("*St. Paul*"), 514 N.W.2d 113, 115 (Mich. 1994). Insurance policies are subject to the same rules of interpretation that apply to the interpretation of contracts. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 26, 26 (Mich. 2005). "A contract must be interpreted according to its plain and ordinary meaning." *Holmes v. Holmes*, 760 N.W.2d 300, 311 (Mich. Ct. App. 2008) (citation omitted). An undefined contractual provision "must be construed in a manner most likely to correspond to the intention of the parties to the contract." *Bertrand v. Pac. Employers Ins. Co.*, No. 219724, 2001 WL 1464524, at *2 (Mich. Ct. App. Nov. 16, 2001) (citation omitted).

*St. Paul* is the seminal case in this area of Michigan insurance law. In that case, three insurance policies covered a loss and one of the insurance companies brought suit, seeking proration of the liability. *St. Paul*, 514 N.W.2d at 114. Each of the policies contained an "other insurance" clause. *Id.* These clauses are "provisions inserted in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *Id.* at 115. Under Michigan law, "other insurance" clauses fall into three general categories that reduce an insurer's loss in the event of concurrent coverage: (1) *pro-rata* clauses that purport to "limit the insurer's liability to a proportionate percentage of all insurance covering the event"; (2) escape or no-liability clauses, under which "there shall be no liability if the risk is covered by other insurance"; and (3) excess clauses, which "limit[] the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance." *Id.* (citing *Fed. Kemper Ins. Co. v. Health Ins. Admin. Co.*, 383 N.W.2d 590, 592 (Mich. 1986), *overruled on other grounds by Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.*, 505 N.W.2d 820 (Mich. 1993)).

In *St. Paul*, two of the "other insurance" clauses provided that the insurer would not be liable for a "greater proportion" of the loss than the "total limit of liability of all valid and collectible insurance." *Id*. at 116. The court deemed these to be *pro-rata* clauses that "are generally intended to become effective only when other valid and collectible primary insurance is available." *Id*. (citation omitted). The third policy's "other insurance" clause provided that, in the time period which saw the loss, the policy "shall apply only as excess insurance over any other valid and collectible insurance" and then "only in the amount by which the applicable limits of [the third policy] exceeds the sum of the applicable limits of liability of all such other insurance." *Id*. (emphasis omitted). The court deemed this to be an excess "other insurance" clause that intended the policy "only afford secondary coverage when the same loss is covered by 'other insurance.'" *Id*. (citation omitted).

The *St. Paul* court considered whether the two *pro-rata* "other insurance" clauses and the excess "other insurance" clause could be given effect together. *Id*. at 118. It reconciled the two types of clauses by "interpreting the policy containing the excess clause as secondary coverage where there is another insurance policy covering the same risk." *Id*. at 119. Thus, "the excess insurer is generally liable for the loss only to the extent that the insured's claim exceeds the policy limits of the insurance policy containing the *pro-rata* 'other insurance' clause." *Id*. The alternative option was to prorate the loss among all three insurers, and the court found "the cost of nullifying the negotiated intent of the parties alarming," and "refrain[ed] from rewriting the . . . contracts and instead g[a]ve effect to the meaning and intent of the policy language." *Id*. at 120–21. The Michigan Supreme Court acknowledged that, in some cases, "other insurance" clauses are irreconcilable. *Id*.

-5-

at 121. Specifically, "competing excess clauses would leave the insured without any coverage where it first appeared he had multiple coverage." *Id*. "In these cases, there is no rational reason to give the language of one policy preference over identical language in the other policy," and the loss should be prorated among all of the insurers. *Id*. at 121 & n.31.

The Michigan Supreme Court further expanded upon *St. Paul* in *Bosco*, in which five automobile insurance policies covered the same event and contained varying excess "other insurance" clauses. 571 N.W.2d at 511. Two of the primary coverage policies contained clauses that provided that the policy would be excess insurance with respect to an event involving a temporary substitute car or non-owned car. *Id*. at 512. The "other insurance" clauses in the remaining umbrella policies did not limit excess coverage to a specific incident or occurrence, but instead remained excess over all other insurance. *Id*. at 515–16. The Michigan Supreme Court held that only the latter were "true" excess insurance clauses and that the former were "coincidental" excess clauses. *Id*. The "true" excess insurance policies were held not to prorate with the "coincidental" excess policies. *Id*.

Therefore, as explained in *St. Paul* and *Bosco*, there are three tiers of excess insurance coverage under Michigan law: primary coverage; excess "other insurance" coverage, such as a "coincidental" excess policy; and "true" excess insurance. *See Bosco*, 571 N.W.2d at 519. Within a specific tier or layer of coverage, liability should be prorated based on the total limits of available coverage within that tier. Once coverage within that tier is exhausted, the next tier of coverage is triggered. *Id*. at 510, 519.

Turning to the case at hand, Liberty argued before the district court that, whereas its umbrella policy is an "excess" policy that obligates it to pay only the amount of loss that exceeds the coverage provided by another insurer, State Farm issued Bouma a "*pro rata*" policy that obligates it to pay before Liberty incurs any liability. The relevant clause in Liberty's policy reads:

> **J. Other Insurance**
> If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

The parallel "other insurance" clause in State Farm's policy originally read: "**5. Other Insurance.** This policy is excess over all other valid and collectible insurance." State Farm subsequently executed an amendatory endorsement, adding a second sentence to this clause of its policy. Thus, at the time of Bouma's accident, State Farm's other insurance clause read: "**5. Other Insurance.** This policy is excess over all other valid and collectible insurance. When like coverage is written in another company, we will share in payments on a pro rata basis."

Liberty contended that, under *St. Paul*, State Farm's *pro rata* "other insurance" clause was primary and that Liberty was liable only in excess of State Farm's policy limit of $3 million. In support of its argument, Liberty pointed out that State Farm amended its "other insurance" clause to include language about *pro rata* apportionment of liability. According to Liberty, had State Farm left the original language in place, both parties would have shared the liability, but the amended language meant that State Farm became the primary second-line insurer. In its cross-motion for summary judgment, State Farm argued that both parties' "other insurance" clauses should be

interpreted to mean that the policies were, separately, in excess of Old Republic's first-line insurance policy. It contended that both its policy and Liberty's were in the same, secondary tier of coverage and that *St. Paul* required the district court to apportion liability between both parties on a *pro rata* basis. Because the policies had a cumulative coverage limit of $13 million, State Farm argued that it was only liable for 3/13 of the $8 million not paid by the first-line insurer, Old Republic.

The district court reasoned that the term "like coverage" in the second sentence of State Farm's amended "other insurance" clause referred to a policy issued by another company that was "in excess over all other valid and collectible insurance." In other words, the district court found that both policies were in the same tier or layer of coverage and the term "like coverage" referred to Liberty's excess policy. Thus, the district court held that the second sentence of State Farm's amended "other insurance" clause was superfluous because it merely reiterated the *pro rata* sharing rule dictated by *St. Paul* for cases involving competing excess insurance clauses. The court determined that the language added to State Farm's policy was not surplusage, but instead merely reiterated what the law required when a "policy confronts a like policy, i.e., a policy of equal priority."

On appeal, Liberty argues that the district court's interpretation of the two "other insurance" clauses was erroneous in two ways: (1) the amendatory endorsement converted State Farm's policy from an excess policy into a *pro rata* umbrella policy; and (2) because of this modification, Liberty's policy should have been construed to be in a different tier or layer of coverage than State Farm's and, thus, excess to it.

Both arguments depend upon the construction of the phrase "like coverage" in State Farm's amendatory endorsement, and the plain meaning of that endorsement refutes both of Liberty's arguments. State Farm's "other insurance" clause originally provided: "This policy is excess over all valid and collectible insurance." Liberty concedes that the "original, standardized language means and does exactly what State Farm says the amended provision means and does," namely establishes that State Farm and Liberty would share in the payments *pro rata* once Old Republic's $1 million primary insurance coverage was exhausted. Appellant Br. at 21. Thus, Liberty's appeal turns on whether the addition of the second sentence to State Farm's "other insurance" clause somehow modified the substantive import of the first sentence. Although Michigan courts have not yet interpreted the exact phrase "like coverage" in the context of competing "other insurance" clauses, the district court's construction gave proper effect to the plain and ordinary meaning of that phrase. The only antecedent to which "like coverage" could refer is the preceding sentence, which contains the language that Liberty concedes would result in *pro rata* allocation of the $8 million liability. Because Liberty offered the same excess coverage as State Farm, it offered "like coverage" with which State Farm would share in payments *pro rata*.

Liberty relies upon two canons of contract construction to argue that the amendatory endorsement modified the *pro rata* allocation scheme that would have been required by *St. Paul*. First, it contends that the district court ignored the rule that every word in a contract must be assumed to have a purpose and that no word should be rejected as mere surplusage if a court can discover any reasonable purpose for it that may be gleaned from the entire contract. *Associated Truck Lines, Inc. v. Baer*, 77 N.W.2d 384, 386 (Mich. 1956). However, State Farm's intent to

incorporate the background rule stated in *St. Paul* regarding the irreconcilability of competing excess "other insurance" clauses is a reasonable purpose. The district court deemed the amendatory endorsement "superfluous" only in the sense that the endorsement redundantly stated existing Michigan law. Thus, the court did not treat the amendatory endorsement as mere surplusage and did not disregard it.

Liberty also argues that the district court ignored the rule of contract interpretation that "specific terms and exact terms are given greater weight than general language and that separately negotiated or added terms are given greater weight than standardized terms." *Royal Ins. Co. of Am.*, 525 F.3d at 420 (citation and internal quotation marks omitted). Liberty appears to rely on State Farm's addition of the phrase "we will share payments on a pro rata basis." However, as the district court noted, the key term in the amendatory endorsement is "like coverage." That term refers to an antecedent that defines the type of coverage provided by another insurer for which State Farm would share in payments *pro rata*. Because the only antecedent for "like coverage" is the excess policy found in the first sentence of State Farm's "other insurance" clause, *and* Liberty concedes that the first sentence, standing alone, would defeat its appeal, Liberty's argument lacks merit and the district court did not ignore the specificity of the amended language.

Furthermore, Liberty is unable to show that the endorsement somehow moved its policy into a secondary tier or layer of umbrella coverage that obligated payment only after State Farm exhausted its $3 million policy limit. Although *Bosco* requires courts to determine allocation issues by looking to the total coverage in each tier or layer of insurance, Liberty's reliance on that case is misplaced. *Bosco* compared the effect of one excess "other insurance" clause that was limited to a

certain event with an "other insurance" clause in an umbrella policy that was materially identical to State Farm's amended "other insurance" clause. 571 N.W.2d at 512. The umbrella policy's clause stated: "[T]he insurance afforded by this policy shall be excess of such other insurance . . . . With respect to the Other Insurance Condition, this insurance will prorate with other similar insurance written excess of the same limits of underlying insurance." *Id*. (emphases omitted). The *Bosco* court found that this broad language was not similar enough to the limited excess "other insurance" clause because it was not limited to a specific event. *Id*. at 513. Thus, the court held that the "coincidental" excess policy should not prorate with the "true" excess policy. *Id*. at 517 ("[T]he effect of the [coincidental] excess clause is to merely allocate liability among the primary insurers, not to magically remove the primary nature of the policy when a nonowned or substitute vehicle is involved.").

In this case, and as Liberty concedes, State Farm's original language contained a "true" excess policy *per Bosco*. The original clause was not limited to any event or occurrence. The amendatory endorsement did not alter the substantive import of State Farm's "other insurance" clause and, thus, this case is distinguishable from *Bosco* because State Farm's and Liberty's coverages are not only "similar" but identical. Indeed, the language of the "true" excess clauses in *Bosco* is almost identical to that contained in State Farm's amendatory endorsement. Whereas State Farm referred to "like coverage," the *Bosco* policies stated that "this insurance will prorate with other *similar* insurance." *Id*. at 512 (emphasis added). Given the similarity between the "true" excess "other insurance" clauses in *Bosco* that would have prorated and State Farm's language, *Bosco* does not support Liberty's position.

Liberty concedes that the original, unamended language in State Farm's policy would require proration and, thus, judgment in State Farm's favor. The only antecedent for the term "like coverage" in State Farm's amendatory endorsement is the original, unamended, "true" excess provision. Because Liberty is unable to show that the amendatory endorsement altered the substantive import of the first sentence of State Farm's "other insurance" clause, we conclude that *St. Paul* requires that it share payment with State Farm on a *pro rata* basis.

## III.

For the foregoing reasons, we affirm the district court's decision.