NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0397n.06

No. 22-2103

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 31, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff-Appellant, | ) ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR ) THE EASTERN DISTRICT OF ) MICHIGAN |
| AMERISURE INSURANCE COMPANY, | ) OPINION |
| Defendant-Appellee. | ) ) |

Before: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

General contractor Kirco Manix Construction, LLC hired Merlo Construction Company, Inc. as a subcontractor for a construction project. During the project, a Merlo employee was seriously injured. He later sued Kirco for his personal injuries in Michigan state court. The insurers for Kirco and Merlo agreed to jointly pay defense costs, but Kirco's insurer (plaintiff Travelers Property Casualty Company of America) later sued Merlo's insurer (defendant Amerisure Insurance Company) in federal court for declaratory relief, arguing that the Amerisure umbrella policy must be exhausted before the Travelers umbrella policy pays any benefits. The district court disagreed and granted summary judgment in favor of Amerisure. We reverse and remand for entry of judgment consistent with this opinion.

I.

Kirco had two insurance policies with Travelers. Its general liability policy provided that Travelers would pay for covered bodily injury and property damage as well as defend against any

suit seeking such damages. And its Travelers umbrella policy afforded additional coverage above the limits in the Travelers general liability policy. The "conditions" section of the umbrella policy explained that it was "excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise."

As for Merlo, its subcontract with Kirco required it to obtain insurance for the project and to name Kirco as an additional insured. Merlo did so with Amerisure Insurance policies. Like Kirco, Merlo obtained both a general liability and an umbrella insurance policy. Merlo's general liability policy with Amerisure was much like the one Kirco had with Travelers, stating that Amerisure would pay for covered "'bodily injury' or 'property damage'" and "defend the insured against any 'suit' seeking those damages."

The Amerisure umbrella policy—the contract at issue here—provided coverage "when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted." Moreover, the Amerisure umbrella policy explained that any "additional insured" covered by the general liability policy would also receive umbrella coverage.

The umbrella policy also included an endorsement that "changes the policy." That endorsement was titled "ADDITIONAL INSURED - PRIMARY/NON-CONTRIBUTORY COVERAGE WHEN REQUIRED BY WRITTEN CONTRACT, WRITTEN AGREEMENT, OR CERTIFICATE OF INSURANCE," and its body provided that:

> Under SECTION II-WHO IS AN INSURED, the following is added to paragraph 3:
>
> > If coverage provided to any additional insured is required by a written contract, written agreement, or certificate of insurance, we will provide coverage to the additional insured on a primary basis without contribution from any other valid and collectible insurance available to the additional insured.

The endorsement further provided that the umbrella policy's "Other Insurance" provisions do "not apply to coverage provided by this endorsement."

As that case worked its way through the Michigan court system,[1] Travelers sued Amerisure and sought a declaratory judgment finding that the Travelers umbrella policy would apply only after the Amerisure umbrella policy was exhausted. Travelers and Amerisure each moved for summary judgment and the district court ruled in favor of Amerisure, concluding that the umbrella policies must pay benefits on a pro rata basis because no written contract required Amerisure to provide primary umbrella coverage. Travelers timely appealed.

II.

We review de novo the district court's grant of summary judgment, "viewing the evidence in the light most favorable to the nonmoving party." *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017) (citation omitted). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This insurance policy priority dispute implicates the principles of contract interpretation. Michigan courts "construe an insurance policy in the same manner as any other species of contract." *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 (Mich. 2012). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 28 (Mich. 2005). "[U]nambiguous contracts are not open to judicial

---

[1]The Michigan Supreme Court recently granted leave to appeal from a Michigan Court of Appeals decision adverse to the plaintiff in the underlying personal injury case. *See El-Jamaly v. Kirco Manix Constr., LLC*, 987 N.W.2d 877 (Mich. 2023); *El-Jamaly v. Kirco Manix Constr., LLC*, No. 355402, 2022 WL 4005344 (Mich. Ct. App. Sept. 1, 2022) (per curiam). Oral argument has yet to be scheduled.

construction and must be enforced as written," for "doing so respects the freedom of individuals freely to arrange their affairs via contract." *Id.* at 30 (emphasis omitted). Finally, Michigan courts "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003).

The parties focus on the meaning of the Amerisure endorsement's heading, which provides: "additional insured - primary/non-contributory coverage when required by written contract, written agreement, or certificate of insurance." (Uppercase omitted). One can approach this heading in two ways. First, one can interpret the heading by itself, reading it as stating that Amerisure offers primary umbrella coverage to an additional insured only when a written contract, written agreement, or certificate of insurance (i.e., "a writing") requires it to do so. This is how the district court read it (and where the parties focus their efforts in support of or against the district court's view). But that interpretive method fails to give effect to every word in an insurance contract, not just a heading but also the body of the insurance policy. *See id.*

The better approach, one that reads the endorsement heading as communicating that the body of the contract will address the circumstances in which Amerisure will offer primary umbrella coverage based on a writing, is consistent with how Michigan courts interpret contracts. That approach considers the contract's provisions in "harmony" and avoids an interpretation rendering the body surplusage or nugatory. *Id.* at 468–69. Indeed, consistent with this principle, Michigan courts have repeatedly used contract headings to help interpret the rest of a contract. *See, e.g.*, *Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 314 N.W.2d 440, 441 (Mich. 1982); *Wells Fargo Bank, NA v. Cherryland Mall Ltd. Partn.*, 812 N.W.2d 799, 811–12 (Mich. Ct. App. 2011); *Steinmann v. Dillon*, 670 N.W.2d 249, 252–53 (Mich. Ct. App. 2003). And the heading's

construction supports this—it is not a complete sentence, further suggesting that it is merely a statement that will be explained by the body. In sum, the heading here operates as a heading should—drawing the reader's attention to something that will be explained in greater detail later.

So we must turn to the body of the endorsement. Recall that it provides "[i]f coverage provided to [Kirco] is required by a written contract, written agreement, or certificate of insurance, we will provide coverage to [Kirco] on a primary basis without contribution from any other valid and collectible insurance available to [Kirco]." This text lends itself to only one clear interpretation: Amerisure will offer primary umbrella coverage if coverage of an additional insured is required by a writing. The endorsement's body does not require the writing to specify that the additional insured must receive primary coverage. Given this, the endorsement unambiguously requires Amerisure to offer primary umbrella coverage to Kirco because a writing (Kirco's certificate of liability insurance) requires coverage for Kirco as an additional insured, and we must enforce it as such. *See Rory*, 703 N.W.2d at 28, 30.

Amerisure pushes back on this conclusion, pointing to two other provisions of its own policies. First, the excess coverage clause in its general liability policy states that additional insureds receive primary coverage (instead of excess coverage) only if a writing "requires primary and non-contributory coverage." Second, Amerisure's umbrella policy provides that "[a]dditional insured coverage provided by this insurance will not be broader than coverage provided by the 'underlying insurance'"—meaning the general liability policy. Amerisure argues that, taken together, these clauses establish that Amerisure's umbrella policy cannot offer primary coverage because no writing requires it to offer primary coverage under its general liability policy.

But that is a step too far. While Amerisure's general liability policy states that it provides excess—not primary—coverage to Kirco, its umbrella policy applies on a different level of

priority. As thoroughly explained in *Bosco v. Bauermeister*, Michigan courts view umbrella policies as a special category of insurance policies that apply only after other insurance policies (like general liability policies) have been exhausted. *See* 571 N.W.2d 509, 514–17 (Mich. 1997). Stating in which order of priority amongst umbrella policies the Amerisure umbrella policy should fall does not conflict with the Amerisure general liability policy's excess coverage clause. Rather, the requirement that the Amerisure umbrella policy cannot exceed coverage offered by the general liability policy addresses the types of claims that fall under the umbrella policy, not the order of priority in which they should be paid.[2] Thus, the Amerisure umbrella policy can offer primary umbrella coverage even though the general liability policy offers excess coverage here. It follows, therefore, that Kirco is entitled to primary umbrella coverage from Amerisure first. Coverage from the Travelers umbrella policy will begin only after the Amerisure umbrella policy's limits are exhausted.

### III.

For the reasons stated, we reverse the judgment of the district court and remand for judgment consistent with this opinion.

---

[2]Michigan's general policy preference that construes ambiguous insurance contracts in favor of coverage, *Raska*, 314 N.W.2d at 441, does not apply here because, "[w]hile such construction devices are appropriate when coverage is at issue, they have no application where the question is not the existence or extent of coverage, but priority of coverage," *Bosco*, 571 N.W.2d at 518.