BOSCO v AUTO-OWNERS INSURANCE COMPANY

Docket No. 146345. Submitted February 15, 1995, at Lansing. Decided July 28, 1995, at 9:05 A.M. Leave to appeal sought.

Frederick C. Bosco, as personal representative of the estate of Eric J. Bosco, filed writs of garnishment in the Genesee Circuit Court against Auto-Owners Insurance Company and USAA Casualty Company after obtaining a $1,044,903.25 judgment against Chris L. Bauermeister, Kenneth L. Cook, Flint Canvas Company, and Flint Tent & Awning, Inc., for the wrongful death of the decedent in a collision between a bicycle ridden by the decedent and a truck driven by Bauermeister in the course of employment with Flint Canvas and Flint Tent & Awning. Bauermeister was covered by a USAA Casualty Company automobile policy with a $100,000 per person limit for personal injury and by a USAA umbrella liability policy with a $1 million limit and prorated liability in the case of other applicable excess insurance. The truck was owned by Cook, who was covered by a Continental Insurance Company automobile policy with a $500,000 limit for personal injury and by an Auto-Owners Insurance Company umbrella liability policy with a $1 million limit and prorated liability in the case of other applicable excess insurance. Flint Canvas was covered by a Frankenmuth Mutual Insurance Company automobile policy with a $250,000 limit for personal injury and a provision that residual liability insurance for a temporary substitute automobile was excess insurance over any other valid and collectible insurance. Before trial of the wrongful death action, Continental had acknowledged primary liability and offered to pay its $500,000 policy limit, and the plaintiff had settled with Frankenmuth for $55,000. The court, Judith A. Fullerton, J., entered a judgment in the garnishment action that apportioned liability for the judgment in the wrongful death action among the various insurers. The court determined that Continental was liable for $500,000, that USAA was liable for $100,000 under its automobile policy, that Frankenmuth would have been liable for

REFERENCES

Am Jur 2d, Insurance § 1791.
See ALR Index under Other Insurance.

$250,000 in the absence of the settlement but was liable for only $55,000 in view of the settlement, and that Auto-Owners and USAA under their respective umbrella policies were each liable for one half of the remaining judgment of $195,000 after $850,000 of coverage under the automobile policies. The plaintiff appealed, seeking pro-rata payment by Auto-Owners and USAA of the $195,000 he waived in the settlement with Frankenmuth.

The Court of Appeals *held:*

Under the circumstances of this case, Frankenmuth was an excess, not a primary, insurer because the truck was a temporary substitute automobile for which the Frankenmuth policy provided excess coverage only. Auto-Owners, USAA under its umbrella policy, and Frankenmuth are each liable for the amount of the judgment that remains after recovery of the Continental policy limit in the same proportion that each insurer's policy limit bears to the total available coverage. Thus, Frankenmuth is responsible for ⅕ of the amount remaining after payment by Continental, and USAA and Auto-Owners are each responsible for ⅖ of that amount.

Reversed.

INSURANCE — LIABILITY INSURANCE — "OTHER INSURANCE" CLAUSES — JUDICIAL CONSTRUCTION.

Conflicts in "other insurance" clauses of multiple liability policies covering the same loss are to be reconciled as best as possible to give effect to the meaning and intent of the language in the policies.

*Beltz & Associates* (by *C. Robert Beltz*), for the plaintiff.

*Rubenstein Chittle & Smith* (by *Thomas E. Chittle*), for Auto-Owners Insurance Company.

*Highland & Zanetti, P.C.* (by *J. R. Zanetti, Jr.,* and *Duncan Hall Brown*), for USAA Casualty Company.

Before: FITZGERALD, P.J., and TAYLOR and MARKMAN, JJ.

MARKMAN, J. Plaintiff appeals the trial court's

order determining the priority of liability of gar-
nishee-defendants. We reverse.

This suit began as a wrongful death action
arising from a truck-bicycle accident in which
fifteen-year-old Eric John Bosco was killed. Defen-
dant Chris Bauermeister was driving the truck,
which was owned by defendant Kenneth Cook. At
the time of the accident, Bauermeister was acting
in the course of his employment with Flint Canvas
Company and Flint Tent & Awning, Inc. This case
was tried before a jury, which found in favor of
plaintiff. Damages of $1,044,903.25 were assessed
in favor of the Bosco estate and persons entitled to
recover.

This appeal involves five insurance policies cov-
ering the various defendants in this matter:

1. Continental Insurance Company issued an
automobile policy to Kenneth Cook, the owner of
the truck, with a $500,000 limit.

2. USAA Casualty Company, Inc. issued an auto-
mobile policy to Chris Bauermeister's father,
which covered his son, with a $100,000 per person
limit.

3. USAA also issued a $1 million personal um-
brella policy to Chris Bauermeister's father that
covered his son. This policy provides in pertinent
part:

> We provide excess liability protection for occur-
> rences covered by primary insurance. We are re-
> sponsible for the amount of loss above the limit of
> the applicable primary insurance up to the Policy
> Limit.

The Michigan amendatory endorsement applicable
to this policy provides in pertinent part:

> If there is other valid and collectible insurance

which covers a loss also covered by this policy, ours will be excess. However, if the other insurance is written specifically to cover as excess over the Primary Insurance limits of liability shown on the Declarations, then we will pay only our proportionate share of the loss.

4. Frankenmuth Mutual Insurance Company issued an automobile policy to Flint Canvas with a $250,000 limit. This policy provides in pertinent part:

> If the Insured has other insurance against a loss covered by Part B [Residual Liability Agreements] of this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.

This policy also carried a Michigan employers nonowned automobile liability and hired automobile endorsement. This provision provides in pertinent part:

> The insurance afforded by this endorsement shall be excess insurance over any other valid and collectible insurance available to the insured.

5. Auto-Owners Insurance Company, Inc., issued a $1 million executive umbrella policy to Kenneth Cook. That policy provides in pertinent part:

> Our liability shall be only for the ultimate net loss in excess of the insured's retained limit.

* * *

If other insurance covering a loss also covered by this policy is available to the insured, the insurance afforded by this policy shall be excess of such other insurance. This does not apply with respect to insurance purchased to apply excess of this policy.

A separate Michigan amendatory endorsement applicable to the policy provides in pertinent part:

With respect to the Other Insurance Condition, this insurance will prorate with other similar insurance written excess of the same limits of underlying insurance.

Continental offered its limits to resolve its liability, and the trial court approved the settlement. There is no dispute between these parties that Continental provided primary coverage and was therefore liable for its $500,000 policy limit. Plaintiff also settled with Frankenmuth just before trial for $55,000 of its $250,000 policy limit in exchange for a covenant not to enforce the remaining judgment against Frankenmuth. The trial court also approved this settlement. The two settlement amounts were treated as setoffs in computing the final judgment.

After the judgment was entered, plaintiff filed affidavits and writs of garnishment against Auto-Owners and USAA. In its garnishee disclosure, Auto-Owners attached a copy of its "Executive Umbrella Policy." However, Auto-Owners maintained that it did not have any liability in this case because of the bad-faith failure of the underlying insurance carriers to settle plaintiff's claims within the limits of their policies, and also because of the contractual limitations in Auto-Owners' policy.

USAA also filed a garnishee disclosure with an

attached statement. In its attached statement, USAA admitted to having two policies for Chris Bauermeister that were claimed to be involved in this matter, a $100,000 primary automobile policy and a $1 million personal umbrella policy. USAA acknowledged that under the above policies, it was liable for $255,517.09, which was forwarded to plaintiff's counsel. This amount included the full policy limits under the $100,000 policy.

In August 1991, plaintiff moved for summary disposition of its garnishment action against both Auto-Owners and USAA. Plaintiff argued that USAA and Auto-Owners were liable for the remainder of the unsatisfied judgment. Plaintiff further claimed that Frankenmuth's policy was an excess policy and USAA and Auto-Owners consequently were required to prorate their policies with Frankenmuth's. Both USAA and Auto-Owners filed cross motions for summary disposition.

The trial court ruled that there were three levels of coverage in this case:

Level    I:    Continental ($500,000)
Level    II:    USAA ($100,000)
                Frankenmuth ($250,000)
Level    III:    USAA ($1 million)
                Auto-Owners ($1 million)

Thus, there was $850,000 of coverage available before USAA's and Auto-Owners' excess policies were available to plaintiff. The remainder of the original judgment was prorated equally between USAA and Auto-Owners.

Plaintiff argues that Frankenmuth's policy should be treated just like the umbrella policies issued by USAA and Auto-Owners because of its excess-insurance clause. Therefore, the umbrella policies issued by Auto-Owners and USAA, by con-

tributing their pro-rata portion, should cover the $195,000 difference between the limits under the Frankenmuth policy and the amount for which Frankenmuth agreed to settle.

> Broadly defined, insurance is a contract by which one party, for a consideration, assumes particular risks of the other party. The parties have the right to employ whatever terms they wish, and the courts will not rewrite them as long as the terms do not conflict with pertinent statutes or public policy. *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566-567; 489 NW2d 431 (1992).
>
> Included in many of these contracts are "other insurance" clauses. These clauses originated in the area of property insurance and were designed to protect the insurer from the moral hazards of fraud and carelessness incident to the over-insurance of property. "Other insurance" clauses are provisions inserted in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss. Insurance companies continue to include these provisions as standard clauses in liability policies even though potential fraud through over-insurance in this context is remote. [*St Paul Fire & Marine Ins Co v American Home Assurance Co,* 444 Mich 560, 564; 514 NW2d 113 (1994).]

In *St Paul,* the Michigan Supreme Court addressed the prioritization of malpractice insurance policies containing "other insurance" clauses. The Court noted that "other insurance" clauses fall into three general categories:

> 1. A pro-rata clause, which purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event;
> 2. An escape or no-liability clause, which provides that there shall be no liability if the risk is covered by other insurance; and

3. An excess clause, which limits the insurer's
liability to the amount of loss in excess of the
coverage provided by the other insurance. [*Id.* at
565.]

"The effect of each in the event of concurrent
coverage is to reduce the insurer's loss." *Id.*

The Supreme Court reconciled pro-rata and ex-
cess "other insurance" clauses holding the excess
insurer liable only to the extent that the insured's
claim exceeded the policy limits of the insurance
policy containing the pro-rata clause. *Id.* at 573-
577. In doing so, the Court rejected the *Lamb-
Weston* Doctrine[1] that views all conflicting "other
insurance" clauses as irreconcilable and prorates
liability among all insurers. The Court instead
adopted the majority rule that endeavors to recon-
cile the competing clauses as best as possible. The
Court stressed that it would "refrain from rewrit-
ing the instant contracts and instead give effect to
the meaning and intent of the policy language."
*Id.* at 570. The Court noted, however, that in
certain instances it may be necessary to declare
the "other insurance" clauses irreconcilable when
the applicable portions of the two "other insur-
ance" clauses are identical excess clauses. *Id.* at
577.

Unlike *St Paul,* this case focuses on the priority of
secondary carriers. The trial court applied a three-
tier approach, distinguishing between the policies
issued by Frankenmuth and USAA ($100,000) and
those of Auto-Owners and USAA ($1 million).
While the $100,000 USAA policy is similar to
Frankenmuth's, USAA never argued that this pol-
icy should be given the same treatment as the
umbrella policies. Additionally, USAA has paid the

---

[1] *Lamb-Weston v Oregon Automobile Ins Co,* 219 Or 110; 341 P2d
110 (1959).

proceeds under the $100,000 policy. Accordingly, USAA has waived its claim and we must only determine the amount and priority of payment by Frankenmuth, Auto-Owners, and USAA (under its $1 million policy).

Frankenmuth's policy provides for both primary and excess insurance. The excess insurance is available under certain limited circumstances provided for in Part B of the policy (Residual Liability Agreements) and in the Michigan employers non-owned automobile liability and hired automobile endorsement. The parties disagree regarding the applicability of the endorsement. However, we find it unnecessary to address this issue because we find that the clause under Part B of the policy providing for excess insurance for a "temporary substitute automobile" applies in this case.[2]

Defendants cite a number of cases in which primary insurance policies with excess clauses, such as that in Frankenmuth's policy, are required to be exhausted before coverage under an umbrella policy is triggered. In *Allstate Ins Co v American Hardware Mutual Ins Co,* 865 F2d 592 (CA 4, 1989), the Fourth Circuit Court of Appeals, adopting the logic applied by the Fifth Circuit Court of Appeals in *Allstate Ins Co v Employers Liability Assurance Corp, Ltd,* 445 F2d 1278 (CA 5, 1971), found that because the primary policy with the excess clause was in most regards a primary policy, its limits should be exhausted first. The court further noted:

It seems clear to us that the overwhelming

---

[2] Part B of Frankenmuth's policy defines "temporary substitute automobile as "any automobile, truck or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

weight of authority is that where purported conflicts between a policy providing essentially primary coverage is made excess by the involvement of a non-owned vehicle and a policy providing an umbrella or catastrophe policy are in conflict, the courts have held that the umbrella policy need contribute only after the primary and ordinary excess coverages as "other collectible insurance" in the meaning of the other insurance of the umbrella policy are exhausted. [865 F2d 595, quoting *United States Fire Ins Co v Maryland Casualty Co,* 52 Md App 269; 447 A2d 896 (1982).]

See also *Liberty Mutual Ins Co v Harbor Ins Co,* 603 A2d 300 (RI, 1992).

In *United Services Automobile Ass'n v Empire Fire & Marine Ins Co,* 134 Ariz App 64; 653 P2d 712 (1982), the court similarly held that a primary policy with an excess clause with respect to a nonowned automobile must be exhausted before an umbrella policy must contribute to the loss. The court distinguished between the umbrella policy, which under no set of circumstances could ever be primary insurance, and the policy that was written as primary coverage with an excess insurance provision. *Id.* at 66. The court found:

> While it is true that it is excess insurance in this instance because Richards was driving someone else's automobile it necessarily contemplated a different and probably a greater risk than that covered by the Empire [umbrella] policy. What's more, since the USAA policy was issued to specific persons for primary limited amounts, USAA was in a better position to evaluate its risk than would be a purely excess carrier against whom no claims might be made even though its insureds had repeatedly incurred liability in amounts within their primary coverage. [Id.]

The court concluded that "[t]here is certainty and

simplicity in a rule that holds insurers who issue residual protection only are last to pay so long as that is their expressed intent." *Id.* In *Illinois Emcasco Ins Co v Continental Casualty Co,* 139 Ill App 3d 130; 93 Ill Dec 666; 487 NE2d 110 (1985), the court, comparing premiums, found the umbrella policy to require a lower premium for a smaller risk, thus supporting a finding that an umbrella policy cannot be expected to prorate with other excess coverages.

We therefore recognize the deference given by other jurisdictions to the approach taken by the trial court and advocated by USAA and Auto-Owners. We further note the reasonableness and "certainty and simplicity" of this approach. Nevertheless, we do not believe that such treatment in this case gives proper effect to the language of the insurance policies themselves. "Certainty and simplicity," as the Michigan Supreme Court has observed, should not be achieved at "the cost of nullifying the negotiated intent of the parties." *St Paul, supra* at 577.

In seeking to effectuate the meaning and intent of an insurance policy, we must look to the language of the policy itself. Unlike the "umbrella" policies, which essentially provide excess coverage, Frankenmuth's policy provides for primary and excess insurance. Such excess insurance is applicable only under limited circumstances. However, where, as in this case, those limited circumstances exist, the Frankenmuth policy affords "excess" insurance; nothing more, nothing less. By contrast, if they do not exist, the excess insurance clause is inapplicable.

A comparison of Frankenmuth's excess clause with the applicable provisions in USAA's and Auto-Owners' umbrella policies in fact reveals similar language.

1. Auto-Owners' policy (endorsement) provides that it "will prorate with other similar insurance written excess of the same limits of underlying insurance."

2. USAA's umbrella policy provides that "if the other [valid and collectible] insurance [which covers a loss also covered by this policy] is written specifically to cover as excess over the Primary Insurance limits of liability shown on the Declarations, then we will pay only our proportionate share of the loss." "Primary insurance" is defined as "the policies whose limits are shown in the declarations. This includes renewals or replacements of these policies."

3. Frankenmuth's policy provides that with respect to a temporary substitute automobile, the insurance "shall be excess insurance over any other valid and collectible insurance."

The phrase "any other valid and collectible insurance" reasonably includes those underlying policies under which USAA and Auto-Owners intend to be excess. Thus, we believe that, under the circumstances in this case, Frankenmuth's insurance is "similar insurance written excess of the same limits of underlying insurance" under Auto-Owners' policy or "other valid and collectible insurance which covers a loss also covered by [the umbrella] policy" under USAA's umbrella policy. Frankenmuth does not limit its excess coverage so as to prevent concurrent coverage by umbrella policies nor do Auto-Owners and USAA refuse contribution with policies providing such excess insurance.

We are aware of the general intent of the umbrella policies to provide extended coverage, up to high limits, over and above primary insurance coverage. However, under limited circumstances, we believe that this same intent has been expressed in the Frankenmuth policy. The fact that

this coverage has been incorporated in an "automobile" policy whose principal purpose may be to provide primary insurance coverage does not change the analysis.

Categorizing insurance policies as "primary" or "excess" (or some hybrid thereof), and subjecting these policies to legal treatment on the basis of such categorizations, may have the inadvertent effect of distracting us from our obligation to scrutinize and give meaning to the specific terms of policies.

The parties have broached the issue of premiums. Presumably, greater risk is associated with higher premiums. Thus, one would expect premiums under umbrella policies, everything else being equal, to be relatively low in comparison to premiums under policies providing primary insurance coverage. However, even if a greater premium was paid for the Frankenmuth policy than for either Auto-Owners' or USAA's policies, that price would presumably take into account both aspects of the Frankenmuth policy, primary and excess coverage. Neither Auto-Owners nor USAA has shown that the premium attributable to the excess insurance portion of the Frankenmuth policy is disproportionately higher than that paid for the umbrella policies.

In rendering our decision, we do so with an awareness of the difficulties of this case. We do not ignore the existence of the $100,000 USAA policy nor do we conclude, on the basis of an interpretation of the policies, that Frankenmuth's policy is excess to this policy. For the reasons stated earlier it is unnecessary for us to include this policy in our analysis at all. Although the effect of our decision in this case is to render Frankenmuth's policy excess to the $100,000 USAA policy, such result is a practical function of the waiver of

USAA's claim and its prior payment of the money, not a decision by this Court regarding its priority.

We further note our awareness of the fact that, unlike most automobile policies, which are essentially primary insurance policies, umbrella policies require the maintenance of primary insurance. Presumably, the umbrella insurer seeks to minimize its exposure as much as possible in this way. However, as in this case, it is possible that what the umbrella insurer may consider primary insurance is actually excess under certain limited circumstances. In such cases, the umbrella insurer may become liable for more than it may have intended. Nevertheless, we believe that under the circumstances of this case, all three insurance policies provide the same priority of coverage (although in different amounts).[3] If Auto-Owners and USAA had intended their policies to be excess to policies such as Frankenmuth's, we believe they had the ability to accordingly limit their liability by making that intent clear in their policies. We will not rewrite these contracts to accomplish that result.

Auto-Owners further contends that it is not liable for any amount because of the bad faith of plaintiff and Frankenmuth during settlement. However, it does not appear that this issue was decided at the time the trial court determined the priorities of the insurance policies. In its brief on appeal, Auto-Owners states that this was actually the subject of a declaratory action in the trial court as well as the subject of an application for leave to appeal in this Court. The application for leave to appeal referred to by Auto-Owners was dismissed by order of this Court dated June 23,

---

[3] We reject plaintiff's claim that Frankenmuth's policy was actually excess to the umbrella policies. All three policies provided concurrent excess coverage.

1992. Auto-Owners has failed to show how this Court has jurisdiction over the separate declaratory action at this time. MCR 7.203.

After having established that USAA, Frankenmuth, and Auto-Owners are jointly liable for the remaining amounts due, we must now determine in what proportion they are liable. There are different methods of calculating liability. See *Reliance Ins Co v St Paul Surplus Lines Ins Co,* 753 F2d 1288 (CA 4, 1985). However, we believe that each insurer's liability should be prorated on the basis of the ratio of the insurer's limits of liability to the total limits of available coverage on the loss. *Mary Free Bed Hosp & Rehabilitation Center v Ins Co of North America,* 131 Mich App 105; 345 NW2d 658 (1983); *St Paul,* supra at 565-566, n 14. Thus, Frankenmuth would be responsible for ⅑ of the amount remaining due after payment under Continental's policy and USAA and Auto-Owners are each responsible for ⅘ of that amount.

Reversed.