PIONEER STATE MUTUAL INSURANCE COMPANY v TIG INSURANCE
COMPANY

Docket No. 201173. Submitted November 6, 1997, at Grand Rapids.
Decided April 28, 1998, at 9:00 A.M.

> Pioneer State Mutual Insurance Company, as the assignee of Richard
> and Steven Newhauser, brought an action in the Kent Circuit Court
> against TIG Insurance Company, seeking contribution toward
> amounts Pioneer paid to Joseph Malesich and Secura Insurance
> Company in settlement of personal injury and property damage
> claims against the Newhausers and contribution toward expenses
> Pioneer incurred in defending the Newhausers against those
> claims. Steven Newhauser, while operating a boat owned by Rich-
> ard Newhauser, his father, had collided with a boat operated by
> Malesich and insured by Secura. Richard Newhauser was covered
> by a Pioneer personal liability insurance policy with a watercraft
> liability endorsement. Stephen Newhauser, as a resident of his
> mother's household, was covered by a TIG personal liability insur-
> ance policy issued to his mother. The Pioneer policy and the TIG
> policy both provided that their respective coverage was in excess
> over other valid and collectible insurance. The court, Paul J.
> Sullivan, J., granted summary disposition for Pioneer, directing TIG
> to pay Pioneer one-half of the amount paid to settle Malesich's
> claim, one-half of the amount paid to settle Secura's claim, and
> one-fourth of the expenses incurred in defending the Newhausers.
> TIG appealed.

> The Court of Appeals *held*:

> Two identical "excess" "other insurance" clauses cannot be rec-
> onciled rationally and must be deemed mutually repugnant. Cover-
> age should be apportioned between the insurers in a reasonably
> equitable manner. Where, as here, the policies insured at the same
> layer of coverage (i.e., neither one was an umbrella or true excess
> policy) and the policy limits are the same, coverage and the costs
> of settling the claims against the insured are apportioned properly
> at one-half for each insurer.

> Affirmed.

INSURANCE — LIABILITY INSURANCE — COMPETING EXCESS OTHER INSURANCE
CLAUSES.

Two liability insurance policies that cover a common insured and that
each provides that its coverage is in excess over other valid and
collectible insurance have competing "excess" "other insurance"
clauses that cannot be reconciled rationally and therefore must be
deemed mutually repugnant; a court, when asked to determine how
much each insurer must pay toward the settlement of a liability
claim against the insured, should attempt to apportion coverage
between the policies in a reasonably equitable manner.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by
*Robert L. DeJong* and *Vincent E. Woltjer*), for the
plaintiff.

*Kallas & Henk, P.C.* (by *Leonard A. Henk*), for the
defendant.

Before: MARKEY, P.J., and KELLY and WHITBECK, JJ.

WHITBECK, J. Defendant TIG Insurance Company
appeals as of right from an order granting summary
disposition to plaintiff Pioneer State Mutual Insurance
Company under MCR 2.116(C)(10) and entering judg-
ment in favor of Pioneer for $44,124.44 plus interest.
We affirm.

This case arises from a boating accident that
occurred on Gull Lake on July 31, 1994. A boat owned
by Richard Newhauser and operated by his son Ste-
phen Newhauser collided with a boat occupied by
Joseph Malesich. The accident apparently resulted in
serious injury to Malesich. Thereafter, Malesich filed
a complaint against Stephen Newhauser and Richard
Newhauser in the Kalamazoo Circuit Court. Malesich
alleged that Stephen Newhauser's negligent operation
of Richard Newhauser's boat caused the accident,
that Richard Newhauser was liable as the owner of
the boat for his son's negligent operation of the boat,
and that Richard Newhauser knowingly authorized or

permitted the boat to be operated by a person under the influence of intoxicating liquor.

Pioneer insured Richard Newhauser for personal liability up to $500,000. For an additional premium, Pioneer provided Richard Newhauser with a watercraft liability endorsement. Pioneer's policy included the following clause:

> Other Insurance — Coverage E — Personal Liability. If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. *However, any insurance we provide for a vehicle or watercraft is in excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.* [Emphasis added.]

TIG insured Nancy Newhauser, the ex-wife of Richard Newhauser and mother of Stephen Newhauser, for personal liability up to $500,000. TIG's policy defined its "insured" as "you and residents of your household who are your relatives." TIG apparently acknowledges that it covered Stephen Newhauser under its policy with Nancy Newhauser.[1] That policy included the following "excess" clause:

> Other Insurance — Coverage E — Personal Liability. *This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.* [Emphasis added.]

---

[1] TIG states in its brief that, with regard to this case, it "only insures Stephen Newhauser."

Pioneer provided legal representation to Richard Newhauser and Stephen Newhauser in Malesich's suit against them. On receipt of the Malesich complaint, Pioneer contacted TIG and sought contribution under TIG's policy with Nancy Newhauser. TIG took the position that, even if Stephen Newhauser was an insured under the TIG policy, the above "other insurance" provision was triggered so that the TIG coverage was excess over the coverage provided by the Pioneer policy. Pioneer defended Richard Newhauser and Stephen Newhauser without aid from TIG. Pioneer settled the Malesich suit for $75,000. Pioneer also settled a property damage claim by Secura Insurance Company, as the insurer of Malesich's boat, for $7,125. TIG neither represented Stephen Newhauser nor contributed to either settlement. Richard Newhauser and Stephen Newhauser assigned to Pioneer any claims that they may have had against TIG based on TIG's refusal to defend or indemnify them in the Malesich suit.

Thereafter, Pioneer filed suit against TIG, seeking one-half of the costs associated with defending and indemnifying Richard Newhauser and Stephen Newhauser. The trial court granted Pioneer's motion for summary disposition under MCR 2.116(C)(10). The trial court found that Stephen Newhauser was an insured under the TIG policy, that TIG had a duty to defend and indemnify Stephen Newhauser, and that TIG had admitted its refusal to participate in the settlement negotiations. The trial court entered judgment in favor of Pioneer for one-half of the amount that Pioneer paid to settle the Malesich suit, one-half of the amount that Pioneer paid to settle the property damage claim by Secura, and one-fourth of the

expenses and costs Pioneer incurred in defending Richard Newhauser and Stephen Newhauser.

At issue in this case is the allocation between Pioneer and TIG of the losses and expenses resulting from the boat accident in light of their respective contractual obligations and the provisions of the respective insurance contracts providing that each insurer's coverage was only "in excess" of other insurance coverage. Although the particular language of the two policies involved in this case is different, the policies are substantively identical. Pioneer's policy states that its coverage for watercraft is in excess over other insurance coverage, while TIG's policy generally states that it provides "excess" coverage over other insurance coverage. Thus, both policies purport to provide coverage only after other sources of insurance have been exhausted.[2]

TIG essentially argues that Pioneer should be regarded as providing primary coverage and that TIG is not liable because the total amount Pioneer paid was less than the $500,000 limit of Pioneer's policy. Alternatively, TIG argues that its liability should be limited to twenty-five percent because Pioneer provided coverage for both Richard Newhauser and Stephen Newhauser, while TIG provided coverage only for Stephen Newhauser. For the reasons discussed below, we reject TIG's positions.

Our review of a motion for summary disposition is de novo. *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). A motion under MCR 2.116(C)(10) tests the factual basis underlying a

---

[2] During oral argument, counsel for both parties agreed that the two clauses were essentially identical and "repugnant."

claim. This Court's task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue regarding any material fact exists to warrant a trial. *Id.*

We firstly note that, as observed by the Michigan Supreme Court in *St Paul Fire & Marine Ins Co v American Home Assurance Co*, 444 Mich 560, 564; 514 NW2d 113 (1994):

> Broadly defined, insurance is a contract by which one party, for a consideration, assumes particular risks of the other party. The parties have the right to employ whatever terms they wish, and the courts will not rewrite them as long as the terms do not conflict with pertinent statutes or public policy. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566-567; 489 NW2d 431 (1992).

We secondly note that "other insurance" clauses are provisions included in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss. *St Paul, supra* at 564. There are three general categories of "other insurance" clauses. First, there are "pro-rata" clauses, that purport to limit the insurer's liability to a proportionate percentage of all insurance covering the event. *Id.* at 565. Second, there are "escape" or "no-liability" clauses, that provide that there shall be no liability if the risk is covered by other insurance. *Id.* Third, there are "excess" clauses that limit the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance. *Id.*

Disputes arise, as in this case, when two or more insurance policies covering the same risk contain such "other insurance" provisions. A variety of combinations of the clauses may occur (e.g., pro rata versus excess, pro rata versus escape, excess versus excess),

and the courts have developed different rules for resolving these conflicts. *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc*, 424 Mich 537, 542-543; 383 NW2d 590 (1986), overruled in part by *Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358; 505 NW2d 820 (1993). As stated by the Michigan Supreme Court in *Federal Kemper, supra* at 543:

> Two trends have evolved. The majority rule attempts to reconcile the competing provisions by discerning the parties' intent through an analysis of the clauses. See, *e.g., Jones v Medox*, 430 A2d 488 (DC App, 1981). Critics of this approach argue that it is circular and that the decision as to which clause is primary depends on which policy is read first. Thus some courts deem the provisions "mutually repugnant" and reject both clauses. *Lamb-Weston, Inc v Oregon Automobile Ins Co*, 219 Or 110, 129; 341 P2d 110 (1958). Courts adopting this minority view . . . hold that liability must be prorated. *Id.*

In *St Paul, supra* at 576-577, the Michigan Supreme Court adopted the majority rule, at least with respect to disputes between pro-rata and excess "other insurance" clauses. The Court, *id.*, stated:

> We are persuaded by the reasoning in *Jones* [*v Medox*], *supra*, and therefore adopt the majority view for resolving disputes between pro-rata and excess "other insurance" clauses. Although the simplicity and ease of application of the *Lamb-Weston* [*Inc v Oregon, supra*] rule is tempting, we find the cost of nullifying the negotiated intent of the parties alarming. Accordingly, we refrain from rewriting the instant contracts and instead give effect to the meaning and intent of the policy language. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197; 476 NW2d 392 (1991); *Eghotz* [*v Creech*, 365 Mich 527, 530; 113 NW2d 815 (1962)].

Notably, *St Paul, supra,* involved a dispute among three insurance companies that provided malpractice insurance to an attorney. *Id.* at 561-562, 569. As the Court noted, the policies provided by two insurers included "pro-rata" "other insurance" clauses, while the policy of the third insurer included an "excess" "other insurance" clause. *Id.* at 566-567, 569.

Thus, in accordance with the majority view, the Michigan Supreme Court in *St Paul, supra,* concluded that "pro-rata" and "excess clauses" could be reconciled by construing a policy containing an "excess" clause as secondary coverage to a policy containing a "pro-rata" clause, so that an insurer protected by an "excess" clause would be liable only after the policy limit of a policy containing a "pro-rata" clause was exhausted. However, the *St Paul* Court stated that it might be necessary to declare identical *excess* clauses irreconcilable:

> We also acknowledge that it may be necessary to declare "other insurance" clauses irreconcilable when the applicable portions of the two other insurance clauses are identical excess clauses. In the example presented, [of conflicting "excess" insurance clauses] there is an actual problem with circularity. Moreover, the literal interpretation of policies containing competing excess clauses would leave the insured without any coverage where it first appeared he had multiple coverage. In these cases, there is no rational reason to give the language of one policy preference over identical language in the other policy.
>
> However, that is not the case before us. Instead, we are confronted with a dispute involving pro-rata and excess "other insurance" clauses. [*St Paul, supra* at 577-578].

See also *Secura Ins Co v Cincinnati Ins Co,* 198 Mich App 243; 497 NW2d 230 (1993), *Nat'l Indemnity*

*Co v Budget Rent A Car Systems, Inc,* 195 Mich App 186; 489 NW2d 175 (1992).[3]

Here, the two "excess" clauses are substantively identical. Thus, there *is* no rational way to reconcile the competing "excess" clauses. Although under *St Paul* an effort should be made to reconcile competing "other insurance" clauses where reasonably possible, "excess" clauses with substantively identical meaning in the context of a particular case may not be reconciled. As observed by the *St Paul* Court, an arguable literal interpretation that would deny any insurance coverage in the face of competing "excess" clauses would be absurd. Rather, where there are two competing and "mutually repugnant" "excess" clauses, the courts should attempt to apportion coverage between the policies in a reasonably equitable manner. Here, both the Pioneer and TIG policies, if given literal effect, would lay the responsibility to defend and indemnify Stephen Newhauser on the other company. As Pioneer points out, this would, ironically, leave Stephen Newhauser, an "insured" under both policies, without a defense or indemnification.

Our conclusion in this regard is not altered by the recent decision of the Michigan Supreme Court in *Bosco v Bauermeister,* 456 Mich 279; 571 NW2d 509 (1997), reversing this Court's opinion in *Bosco v Auto-*

---

[3] The Michigan Supreme Court also noted in *St Paul, supra* at 572-573, n 24, that with the exception of *Farm Bureau Mut Ins Co v Horace Mann Ins Co,* 131 Mich App 98; 345 NW2d 655 (1983), this Court has limited the application of the minority rule to instances where there are *identical* conflicting "other insurance" provisions. The Court did not express an opinion regarding the correctness of *Farm Bureau,* which concerned conflicting escape and pro-rata clauses. In *Mary Free Bed Hosp & Rehabilitation Center v Ins Co of North America,* 131 Mich App 105; 345 NW2d 658 (1983), this Court adopted the minority view to resolve conflicting excess clauses.

*Owners Ins Co*, 212 Mich App 421; 539 NW2d 517 (1995). There, the Court reinstated the trial court's holding that three "layers" of coverage existed: (1) primary coverage provided by an insurer under an automobile policy, (2) excess "other insurance" coverage provided by two insurers under automobile policies, and (3) "true" excess coverage provided by two insurers under umbrella policies. The issue before the Court was the relationship between the excess "other insurance" coverage provided by one insurer, Frankenmuth Mutual Insurance Co., Inc., and the "true" excess coverage provided by the two umbrella insurers, USAA Casualty Co. and Auto-Owners Insurance Co., Inc. This Court had found that each insurer's liability should be prorated on the basis of the ratio of the insurer's limits of liability to the total limits. *Id.* at 435. The Michigan Supreme Court held:

> We conclude that the distinction between "true" excess insurance coverage and excess "other insurance" based on the difference in policy types within the insurance industry, the premiums charged for and risks assumed by the policies, the language of the policies, and the reasonable expectations of all the contracting parties requires an excess "other insurance" policy to be exhausted before a "true" excess insurance policy is required to contribute to a loss. [*Bosco v Bauermeister, supra* at 304.]

The Michigan Supreme Court therefore required the "excess" "other insurance" policy of Frankenmuth to be exhausted before the "true" "excess umbrella" policies could be required to contribute to the loss. *Id.* at 281-282. Here, we are not confronted with two different "layers" of coverage. Rather, the excess provisions of both of the competing policies are, for all intents and purposes, essentially at the same "layer."

Under such circumstances, liability is to be apportioned on the basis of the policy limits. Because both of the policies in this case provided a $500,000 limit on coverage, the trial court properly apportioned the settlement costs equally between Pioneer and TIG.[4]

Affirmed.

---

[4] We are uncertain why the trial court imposed only twenty-five percent of the costs of providing representation to Richard and Stephen Newhauser on TIG. However, any error in the failure to apportion these costs evenly benefited TIG. Pioneer has not filed a cross appeal and, accordingly, does not seek relief from the manner in which these costs of representation were apportioned. Therefore, we do not reach this potential issue.