# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

       Plaintiff,

v

XL INSURANCE AMERICA, INC., ZURICH
AMERICAN INSURANCE COMPANY,
ROBERT BOSCH, LLC, VOLKSWAGEN
GROUP OF AMERICA, INC., CBS RADIO,
INC., OF DETROIT, VOLKSWAGEN OF
AMERICA, INC., ANTHONY MICHAEL
PRAINITO, ACE GROUP, GRANGE
INSURANCE COMPANY OF MICHIGAN, and
ACE PROPERTY & CASUALTY INSURANCE
COMPANY,

       Defendants,

and

ALLIANZ GLOBAL RISKS US INSURANCE
COMPANY,

       Defendant/Cross-Plaintiff/Cross-
       Defendant-Appellant,

and

IRONSHORE SPECIALTY INSURANCE
COMPANY,

       Defendant/Cross-Defendant/Cross-
       Plaintiff-Appellee.

UNPUBLISHED
March 16, 2017

No. 329277
Oakland Circuit Court
LC No. 2014-139843-CB

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

       Plaintiff,

-1-

v

XL INSURANCE AMERICA, INC., ZURICH
AMERICAN INSURANCE COMPANY,
ROBERT BOSCH, LLC, VOLKSWAGEN
GROUP OF AMERICA, INC., CBS RADIO,
INC., OF DETROIT, VOLKSWAGEN OF
AMERICA, INC., ANTHONY MICHAEL
PRAINITO, ACE GROUP, and GRANGE
INSURANCE COMPANY OF MICHIGAN,

        Defendants,

and

ALLIANZ GLOBAL RISKS US INSURANCE
COMPANY,

        Defendant/Cross-Plaintiff/Cross-
        Defendant,

and

IRONSHORE SPECIALTY INSURANCE
COMPANY,

        Defendant/Cross-Defendant/Cross-
        Plaintiff-Appellee,

and

ACE PROPERTY & CASUALTY INSURANCE
COMPANY,

        Defendant-Appellant.

No.  329293
Oakland Circuit Court
LC No.  2014-139843-CB

Before:  RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

In these consolidated appeals, ACE Property & Casualty Insurance Company ("ACE"), and Allianz Global Risks US Insurance Company ("Allianz") appeal as of right the trial court's

-2-

order granting summary disposition to Ironshore Specialty Insurance Company ("Ironshore"). We affirm.

This declaratory judgment action involves a dispute among several insurance companies over what portion of two automobile negligence settlements each of them should be required to pay. The underlying negligence actions arose out of a motor vehicle accident occurring on August 10, 2012. On that day, Anthony Prainito was driving a vehicle in the course of his employment with CBS Radio, Inc., of Detroit ("CBS Radio") when he allegedly turned in front of another vehicle driven by James Cram and in which L. Brooks Patterson was a passenger. As a result of the collision, Patterson and Cram were seriously injured. Volkswagen of America ("Volkswagen") was the titled owner of the vehicle operated by Prainito. The vehicle had been on loan to Robert Bosch, LLC ("Bosch"), an entity which, in turn, during the Woodward Dream Cruise, loaned the vehicle to CBS Radio, Prainito's employer. On March 11, 2013, both Patterson and Cram filed third-party no-fault actions against Prainito, CBS Radio, and Bosch.

At the time of the accident, Volkswagen was insured under a primary policy issued by XL Insurance America, Inc. ("XL"), and an excess policy issued by Ironshore. Bosch was insured under a primary policy issued by Zurich American Insurance Company ("Zurich") and an excess policy issued by Allianz. Finally, CBS Radio was insured by a primary policy issued by The Travelers Property Casualty Company of America ("Travelers") and an excess policy issued by ACE. On March 31, 2014, Travelers filed this declaratory judgment action naming as defendants XL, Ironshore, Allianz, Zurich, Bosch, and Volkswagen. Thereafter, a plethora of cross-claims and third-party complaints were filed.

On August 11, 2014, the parties in the underlying negligence actions and several of the insurers in this declaratory action reached a settlement, the terms of which were sealed by the trial court. The parties represent that as a result of the settlement agreement, Zurich, Travelers, and XL, as primary insurers, tendered their policy limits. Allianz and ACE represent that as a result of this settlement, Zurich, Travelers, XL, Volkswagen, Bosch, CBS Radio, and Prainito were released and dismissed from the declaratory judgment action. There still remained, however, an undisclosed settlement balance to be satisfied by some or all of the three excess insurers, i.e., Allianz, ACE, and Ironshore. Apparently, as part of the settlement, the three excess insurers agreed "to fund the settlement subject to the resolution of the priority of coverage among them."

On December 17, 2014, Allianz and ACE, jointly, and Ironshore filed cross-motions for summary disposition. The parties all argued that the resolution of the priority issue turned on the interpretation of each policy's "other insurance" clause. The ACE policy contains the following "other insurance" clause:

> J. Other Insurance
>
> If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to the excess of this policy.

Allianz's "other insurance" clause is substantially similar to the ACE policy and provides:

> L.  Other Insurance
>
> If valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply as excess of the "other insurance" and will not contribute with the "other insurance".  However, this provision will not apply if the "other insurance" is specifically written to be excess of this policy.

The "other insurance" clause relevant to Ironshore's coverage is markedly different from the ACE and Allianz policies.  Indeed, an "other insurance" clause is not specifically written into the Ironshore policy.  Instead, the nature of the "other insurance" clause applicable to the Ironshore coverage is discerned by reading the terms of both the Ironshore policy and the XL (primary) policy.  The Ironshore policy incorporates by reference the terms of the XL policy.  The Ironshore policy provides:

> A.    This Policy shall provide the Insured with Commercial Excess Liability Insurance coverage in accordance with the same warranties, terms, exclusions and limitations as are contained, on the Inception Date of this Policy, in the applicable *Controlling Underlying Policy(ies)*, subject to the premium, limits of liability, retention, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy, including any and all endorsements attached hereto, inconsistent with or supplementary to the applicable Controlling Underlying Policy(ies).

The Ironshore policy identifies the XL policy as a "Controlling Underlying Policy."  With respect to "other insurance," the XL policy provides, through Endorsement 15, the following:

> 5.  Other Insurance
>
> a.  For any covered "auto" you own, this coverage form provides primary insurance; however, if there is other collectible insurance the insurance provided by this coverage form is excess over such other collectible insurance. . . .

The XL policy further states under the "other insurance" section:

> d.   When this Coverage Form and any other Coverage Form or policy covers on the same basis either excess or primary, we will pay only our share.  Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

In their joint motion for summary disposition and in response to Ironshore's motion, Allianz and ACE argued that because Ironshore's policy included a pro-rata "other insurance" clause, and ACE's and Allianz's policies contained a "true excess" other insurance clause, the excess policies issued by ACE and Allianz provided secondary coverage to that of the Ironshore policy.  Allianz and ACE asserted that Ironshore's policy limits must be exhausted before ACE and Allianz would be required to pay.

By contrast, in its own motion for summary disposition and in response to ACE and Allianz's joint motion for summary disposition, Ironshore argued that its policy coverage was specifically written to be excess whenever there was other collectible insurance. It further argued that the ACE and Allianz policies both stated that their "other insurance" clauses would not apply when the "other insurance" is written to be excess of their policies. Ironshore then reasoned that by operation of this language, the ACE and Allianz policies ceased to be excess under these circumstances and must be exhausted before Ironshore's policy was exposed to liability. Ironshore argued, in the alternative, that at most, liability for the "second layer" of coverage would simply need to be apportioned among the three insurers on the basis of the policy limits.

After considering the language of the policies, and attempting to reconcile them, the trial court held that the ACE and Allianz policies were higher in priority than the Ironshore policy and, therefore, the coverage provided by those policies must be exhausted before Ironshore's coverage was triggered. Accordingly, the court denied ACE and Allianz's joint motion for summary disposition and granted summary disposition in Ironshore's favor. Thereafter, the trial court considered and denied motions for reconsideration and these appeals ensued.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The parties, in their cross motions, all moved for summary disposition pursuant to MCR 2.116(C)(10). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When considering a motion for summary disposition under MCR 2.116(C)(10), a court must view the evidence submitted in the light most favorable to the nonmoving party. *Id*. The interpretation of an insurance contract is a question of law that this Court reviews de novo. *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 253; 819 NW2d 68 (2012).

An analysis of the issue presented on appeal must begin with reviewing principles applicable to the interpretation of contracts. "[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties[.]" *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003) (quotation marks and citation omitted). Insurance-contract language is given its ordinary and plain meaning, *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005), and courts must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory," *Klapp*, 468 Mich at 468. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written[.]" *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

Generally, there are three tiers, or layers, of insurance coverage that govern payment priority: (1) primary coverage; (2) excess "other insurance" coverage; and (3) "true excess" coverage. See *Bosco v Bauermeister*, 456 Mich 279, 281-282, 304; 571 NW2d 509 (1997). In *Bosco*, the Court explained that "true excess" coverage "occurs where a single insured has two policies covering the same loss, but one policy is written with the expectation that the primary

will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted. . . ." *Id*. at 295 (quotation marks and citation omitted). In this case, the trial court concluded that all three policies provided "true excess" coverage. Consequently, it turned to the "other insurance" clauses within the policies in an effort to discern the priority of three policies occupying the same tier.

In *St Paul Fire & Marine Ins Co v Am Home Assurance Co*, 444 Mich 560, 564; 514 NW2d 113 (1994), the Michigan Supreme Court explained that an "other insurance" clause is a provision included in insurance contracts "to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." In general, there are three types of "other insurance" clauses: (1) pro-rata clauses, (2) escape or no-liability clauses, and (3) excess clauses. *Id*. at 565. A pro-rata clause "purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event[.]" *Id*. Usually, a pro-rata clause includes language that "creates a formula for establishing the liability of an insurer when other, collectible insurance exists on a proportionate basis." See *id*. at 566-567. An escape or no-liability "other insurance" clause provides that there shall be no liability if the risk is covered by other insurance. *Id*. at 565. Lastly, an excess "other insurance" clause "limits the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance." *Id*.

When competing policies all contain "other insurance" clauses, coverage disputes inevitably arise. In *Pioneer State Mut Ins Co v TIG Ins Co*, 229 Mich App 406, 411-412; 581 NW2d 802 (1998), this Court recognized that "[a] variety of combinations of the clauses may occur (e.g., pro rata versus excess, pro rata versus escape, excess versus excess) and the courts have developed different rules for resolving these conflicts." For example, in *St Paul Fire*, 444 Mich at 575-576, the Court held that a policy with a pro-rata "other insurance" clause will pay before a policy with an excess "other insurance" clause. In *St Paul Fire*, *id*. at 577, the Court also recognized that it may be necessary to declare "other insurance" clauses irreconcilable "when the applicable portions of the two other insurance clauses are identical excess clauses." Under such circumstances, "there is no rational reason to give the language of one policy preference over identical language in the other policy." *Id*. at 578. In *Pioneer*, 229 Mich App at 414, this Court held that there was no rational way to reconcile competing excess clauses and therefore concluded that coverage should be apportioned between the policies in a reasonably equitable manner.

ACE and Allianz argue that their policies include excess "other insurance" clauses while Ironshore's is intended to be a pro-rata "other insurance" policy. They then rely on *St Paul Fire,* 444 Mich at 575-576, for the proposition that a policy with a pro-rata "other insurance" clause will provide coverage before a policy with an excess "other insurance" clause. However, appellants' analysis and interpretation does not comport with the plain language of the policies.

Both the ACE and Allianz policies contain language typical of an excess "other insurance" clause. ACE's policy provides: "If valid and collectible 'other insurance' applies to damages that are also covered by this policy, this policy will apply excess of the 'other insurance' and will not contribute with such 'other insurance'." Similarly, the Allianz policy states: "If valid and collectible Insurance applies to damages that are also covered by this policy, this policy will apply as excess of the 'other insurance' and will not contribute with the 'other insurance'." Ironshore/XL's Endorsement 15 provides that "[i]f there is other collectible

insurance the insurance provided by this coverage form is excess over such other collectible insurance," and the policy further provides:

> d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our Share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

ACE and Allianz argue that this additional language unambiguously established that the "other insurance" clause incorporated into the Ironshore policy is a pro-rata clause. We disagree.

The language of the Ironshore policy, as provided in Endorsement 15, clearly and unambiguously evidences an intent that the policy will be "excess" over all other collectible insurance. That the Ironshore policy also contains some language generally indicative of a pro-rata "other insurance" clause does not nullify that intent. Indeed, when carefully examined, the policy language at issue does not even suggest the presence of conflicting provisions within the Ironshore policy. We note that in subparagraph 5(d), the Ironshore policy merely provides for a pro-rata obligation when the Ironshore policy and "any other" policy *covers on the same basis. . ."* (emphasis added). In the present case, the phrase "covers on the same basis" can only reasonably refer to circumstances where the competing coverage is also "excess." Thus, this language merely reflects the law that when two competing policies are irreconcilable because their "other insurance" clauses are identical, "the courts should attempt to apportion coverage between the policies in a reasonably equitable manner." See *Pioneer,* 229 Mich App at 414-415 ("Here, we are not confronted with two different 'layers' of coverage. Rather, the excess provisions of both of the competing policies are, for all intents and purposes, essentially at the same 'layer.' Under such circumstances, liability is to be apportioned on the basis of the policy limits."). Essentially, the Ironshore pro-rata language simply requires Ironshore to do by contract what it would be required to do under prevailing legal authority.

Because it appears that all three policies contain excess "other insurance" clauses, it would be natural to conclude that their obligations, therefore, would simply be proportionately shared. However, the additional language found in the ACE and Allianz "other insurance" clauses requires one to engage in further analysis. As indicated earlier, ACE's "other insurance" clause provides:

> J. Other Insurance

> If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". *This provision will not apply if the "other insurance is written to the excess of this policy.* [Emphasis added.]

Similarly, the Allianz "other insurance" clause states:

L.  Other Insurance

> If valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply as excess of the "other insurance" and will not contribute with the "other insurance". *However, this provision will not apply if the "other insurance" is specifically written to be excess of this policy.* [Emphasis added.]

Considering the structure of the paragraphs, "this provision" clearly refers to the "this policy will apply excess of" clause. Consequently, based on the plain language of the contract, ACE's and Allianz's policies evidence an intent that their coverage would be "excess" to other valid and collectible insurance *unless* the "other insurance" is written to be excess of their policies.

Reconciling this additional language found in ACE's and Allianz's policies with the Ironshore policy compels us to conclude that the trial court did not err when it held that ACE and Allianz were first in priority. Because the Ironshore/XL policy was written to be excess of all other insurance coverage, and the ACE and Allianz policies provide that their "other insurance" clauses will not apply when the "other insurance" is written to be excess of their policies, it must be concluded that only the Ironshore "other insurance" clause is truly excess. Put another way, the ACE and Allianz policies cease to be excess under the circumstance present in this case, and the Ironshore policy is excess over any other collectible insurance.

In response to this reasoning, ACE and Allianz argue that because the Ironshore policy does not specifically, by name, reference the ACE and Allianz policies, the Ironshore policy is not specifically written to be in excess of their policies. However, accepting this interpretation of their policies would render nugatory the clear language of the Ironshore policy that its coverage is excess of all other collectible insurance. Courts must give effect to every word, clause, and phrase in a contract and must avoid rendering any part surplusage or nugatory. *Klapp*, 468 Mich at 468. Moreover, in *St Paul Fire*, 444 Mich at 562, the Court held that courts must attempt to reconcile the plain language of competing policies before imposing a proration in accordance with the policy limits. The foregoing analysis furthers the Supreme Court's directives. Accordingly, the trial court did not err when it held that the ACE and Allianz policy limits must be exhausted before any obligation is imposed on Ironshore.

Affirmed.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

-8-