RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0276p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

PIONEER STATE MUTUAL INSURANCE COMPANY, as
insurer for Airport Boulevard Associates,

*Plaintiff-Appellant*,

*v.*

No. 24-1308

HDI GLOBAL,

*Defendant*,

MERCEDES-BENZ RESEARCH AND DEVELOPMENT N.A.
INC., a foreign corporation doing business in
Michigan; ALLIANZ GLOBAL RISKS US INSURANCE
COMPANY, a foreign insurance carrier,

*Defendants-Appellees*.

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-11626—Nancy G. Edmunds, District Judge.

Decided and Filed: December 30, 2024

Before: GILMAN, READLER, and BLOOMEKATZ, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:** Ralph M. Reisinger, REISINGER LAW FIRM PLLC, Grand Rapids, Michigan,
for Appellant. Anthony A. Agosta, Douglas M. Chapman, CLARK HILL PLC, Detroit,
Michigan, for Appellee Mercedes-Benz. Edward F. Dunne, Howard J. Fishman, KARBAL,
COHEN, ECONOMOU, SILK & DUNNE, LLC, Chicago, Illinois, for Appellee Allianz Global.

―――――――――――

**OPINION**

―――――――――――

READLER, Circuit Judge.   While purportedly transferring gasoline between vehicles, employees of Mercedes-Benz Research and Development North America, Inc. unintentionally set fire to property the company was leasing from Airport Boulevard Associates, LLC ("ABA"). ABA's commercial property insurer, Pioneer State Mutual Insurance Company, paid ABA on its resulting claim for losses.   Pioneer then sought reimbursement from Mercedes and Mercedes's general liability insurer, Allianz Global Risks US Insurance Company.

Unable to resolve the matter otherwise, the parties turned to federal court.   There, the district court denied Pioneer's motion for summary judgment and granted summary judgment to Mercedes and Allianz.   *Pioneer State Mut. Ins. v. Mercedes Benz Rsch. & Dev. N.A.*, No. 22-11626, 2024 WL 1671955, at *4 (E.D. Mich. Mar. 27, 2024).   We affirm as to the claims regarding Allianz.   But because Mercedes potentially breached its lease by handling hazardous materials on the property, we reverse and remand for further proceedings as to the Mercedes-related claims.

I.

In 2021, a fire broke out at a warehouse in Ann Arbor, Michigan.   The episode traces back to a Mercedes vehicle stored at a commercial premises that Mercedes leased from ABA. Equipped with the manufacturer's license plates, the car served as a test vehicle for emissions and diagnostic features.   Although Mercedes employees occasionally drove the vehicle off-premises, the company never registered or acquired title to the car, foregoing this otherwise mandatory paperwork under an exception for automobile manufacturers in Michigan's Motor Vehicle Code.   *See* Mich. Comp. Laws § 257.216(1)(a) (eliminating registration and certificate-of-title requirements for cars "in conformance with the provisions of [the Motor Vehicle Code] relating to manufacturers"); *id.* § 257.244(1) (permitting manufacturers to drive unregistered cars on publicly accessible roads if they display special plates); *id.* § 257.28 (defining a manufacturer to include a "corporation . . . engaged in the manufacture of new motor vehicles").

Eventually, Mercedes designated the vehicle for scrapping.  As part of this process, its employees attempted to drain the vehicle's gas tank and transfer that fuel into another car on the premises.  *See* Mich. Dep't of Env't Quality, *Guide for Salvage Yard Owners* 1 (June 14, 1999), https://perma.cc/YJ8G-XMYQ (encouraging that gasoline be "drained from salvaged cars and reused for on-site machinery").  But before they attached any fuel-transfer equipment (such as a pump) to the vehicle, gasoline began spilling out.  Fumes emanating from the gasoline ignited and started a fire.  All told, the leased premises incurred over a million dollars in property damage.

Fortunately for ABA, the company had insured the facility.  Under its general liability and commercial property policy with Pioneer (the "Pioneer Policy"), ABA was entitled to benefits totaling $1,014,760.67.  Pioneer paid that sum to ABA.  But Pioneer too had recourse.  Under a subrogation clause in the Pioneer Policy, Pioneer's payment to ABA triggered a transfer from ABA to Pioneer of any nonwaived "rights to recover damages from another" up to the amount of payment to ABA.  R. 28-4, PageID#207.  Exercising those purported rights, Pioneer hired a subrogation-services firm to demand repayment from Allianz, which had issued a general liability insurance policy to Mercedes (the "Allianz Policy").  When that effort proved futile, Pioneer sued Allianz and Mercedes under Michigan's No-Fault Act, the parties' respective contracts, and tort law.  The district court granted summary judgment to defendants, *Pioneer State Mut. Ins.*, 2024 WL 1671955, at *4, and Pioneer timely appealed.

## II.

We review a district court's grant of summary judgment de novo, viewing evidence and drawing all reasonable inferences in the nonmovant's favor.  *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc).  Summary judgment is warranted when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(a).

A. With this standard in mind, we agree with the district court's decision granting summary judgment to Allianz regarding alleged liability under the No-Fault Act.  By way of background, a third-party claimant to an insurance policy (like Pioneer) typically may pursue a

claim against the insurer after receiving a valid assignment, as a judgment creditor, from the insured. *See* Mich. Comp. Laws § 500.3030 (prohibiting joinder of insurance company in action against tortfeasor); *see, e.g.*, *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 192 (Mich. 1999) (describing judgment creditor–assignee's lawsuit against insurer). The No-Fault Act, by contrast, permits a claimant to seek recovery directly from an issuer of "property protection insurance" for "accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." Mich. Comp. Laws § 500.3121(1). Invoking the Act, Pioneer argues that Allianz must pay it property-protection insurance benefits totaling one million dollars, the per occurrence limit under both Michigan law and the Allianz Policy. *Id.* § 500.3121(5). We disagree twice over.

For one, the Act applies only when the motor vehicle is "required to be registered in [Michigan]." *Id.* § 500.3101(1). The vehicle in question, as Pioneer concedes, was a test vehicle bearing a manufacturer's license plate. Vehicles of that sort are exempt from registration. *Id.* §§ 257.216(1)(a), 257.244(1). Accordingly, the vehicle lands outside the grasp of § 500.3101(1). *See, e.g.*, *Turner by Sakowski v. Farmers Ins. Exch.*, 953 N.W.2d 204, 206 (Mich. 2021) (order) (deeming the No-Fault Act inapplicable to vehicles exempt from the registration requirement).

For another, the Act permits recovery only against providers of "property protection insurance." Mich. Comp. Laws § 500.3121(1). That category of insurance covers accidental harm arising from owning, operating, maintaining, or using a car "as a motor vehicle," *id.*; *see also Turner v. Auto Club. Ins.*, 528 N.W.2d 681, 685 (Mich. 1995), and it differs from Allianz's coverage here. As expressed in capitalized policy language, the Allianz Policy provided "COMMERCIAL GENERAL LIABILITY," not property protection, insurance. R. 36-6, PageID#439. Confirming as much, the policy expressly excludes claims for injuries or property damage arising from the "ownership, maintenance, use, or entrustment" of "auto[s]." *Id.*, PageID#446.

Pioneer disagrees. According to it, this conclusion disregards a potpourri of Michigan case law. But those cases concern issues irrelevant to this appeal. In *Matti Awdish, Inc. v. Williams*, 323 N.W.2d 666 (Mich. Ct. App. 1982), for example, the court held that the automobile insurer, not the insured, is the appropriate defendant in a no-fault property damage

case. *Id.* at 669. In *Dobbelaere v. Auto-Owners Ins.*, 740 N.W.2d 503 (Mich. Ct. App. 2007) (per curiam), the court conducted a fact-laden inquiry into whether the defendant, an automobile insurance provider, had contractually insured the driver and owner of a car. *Id.* at 505–08. And both *Bosco v. Bauermeister*, 571 N.W.2d 509 (Mich. 1997), and *Bogas v. Allstate Ins.*, 562 N.W.2d 236 (Mich. Ct. App. 1997) (per curiam), involved automobile-insurance or umbrella-insurance providers. *Bosco*, 571 N.W.2d at 511; *Bogas*, 562 N.W.2d at 236. None of these cases equated general liability insurance to property protection insurance under the No-Fault Act.

Pioneer emphasizes one other point: Allianz insured Mercedes's testing vehicle. True, the Allianz Policy contained an exception to the automobile exclusion for most property damage arising from "mobile equipment," a defined term that included cars "used exclusively for demonstration and testing purposes that are not licensed for operation on public roads." R. 36-6, PageID#446, 461. As Allianz acknowledges, this clause covered the vehicle despite the general carveout for automobiles. But that coverage does not transform the Allianz Policy into one conferring "property protection insurance" for purposes of § 3121(1). After all, if Mercedes began using their testing car "as a motor vehicle" by driving it like a standard automobile, Mich. Comp. Laws § 500.3121(1); *see id.* § 257.33 (defining "[m]otor vehicle" as "every vehicle that is self-propelled"), the vehicle would have lost its mobile-equipment status and, therefore, its coverage. Again, for Pioneer to recover from Allianz under the mobile-equipment exclusion, it must become a judgment creditor against, and receive a valid assignment from, Mercedes. It cannot employ the No-Fault Act to skip these steps.

B. Switching gears, Pioneer asserts a second ground for recovery from Allianz: the "other insurance" clauses in the respective Allianz and Pioneer Policies. For context, so-called "other insurance" clauses "vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *St. Paul Fire & Marine Ins. v. Am. Home Assurance Co.*, 514 N.W.2d 113, 115 (Mich. 1994). In that way, they "protect the insurer from the moral hazards of fraud and carelessness incident to the over-insurance of property." *Id.* Pioneer cites two such clauses here—one in the Pioneer Policy that limits recovery from Pioneer if ABA has overlapping coverage, and one in the Allianz Policy that limits recovery from Allianz

if Mercedes has overlapping coverage. According to Pioneer, these clauses interact such that the cost of recovery from the fire must be apportioned between it and Allianz.

We disagree. Typically, multiple policies trigger the need to apportion recovery only when the named insured was the same person on both policies and the policies insured against the same risk. *See, e.g.*, *Lubetsky v. Standard Fire Ins.*, 187 N.W 260, 261 (Mich. 1922). That does not describe today's circumstance. The Pioneer Policy provides ABA with property insurance, whereas the Allianz Policy provides Mercedes with general-liability insurance. Both policies' other-insurance clauses confirm as much, because they apply only when the insured *in each contract* has additional coverage. R. 28-4, PageID#206 ("[ABA] may have other insurance subject to the same plan, terms, conditions and provisions as the [Pioneer Policy] . . . If [ABA] do[es], [Pioneer] will pay [its] share of the covered loss or damage."); R. 36-6, PageID#454 ("If other valid and collectible insurance is available to [Mercedes] for a loss [that Allianz] cover[s] . . . [Allianz's] obligations are limited as follows . . . .").

Pioneer cites three cases that it believes say otherwise. *See Pioneer State Mut. Ins. v. TIG Ins.*, 581 N.W.2d 802, 806 (Mich. Ct. App. 1998); *State Farm Mut. Auto. Ins. v. Calvert Ins.*, 978 F.2d 1259 (6th Cir. 1992) (table); *State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 613 F. Supp. 2d 945, 947 (W.D. Mich. 2009). But those cases concerned a single insured, or insureds affiliated by employment, concurrently covered by multiple insurers; none required apportionment among insurers simply for their coverage of opposing parties to a lease. In short, Pioneer fails both prongs needed to justify contractual apportionment between it and Allianz.

C. Lastly, Pioneer seeks recovery from Mercedes in an ostensible negligence action. As an insurer-subrogee, Pioneer faces an immediate hurdle: under the Lease's waiver-of-subrogation clause, Mercedes and ABA "waive[d] and release[d] any right of subrogation which either of them might have against the opposite party for any loss or damage sustained to their respective property interests, to the extent that such loss or damage is covered by an applicable insurance policy or policies." R. 37-1, PageID#499. That clause, in essence, forces Pioneer to bear the risk of loss alone. *See Yerkovich v. AAA*, 610 N.W.2d 542, 544 (Mich. 2000) ("As a subrogee, one stands in the shoes of the subrogor and acquires no greater rights than those possessed by the subrogor." (citing *Shermer v. Merrill*, 33 Mich. 284, 287 (1876))). Michigan

courts generally enforce waivers of this nature. *See Woodman ex rel. Woodman v. Kera LLC*, 785 N.W.2d 1, 19 n.1 (Mich. 2010) (Markman, J., separate opinion) (collecting cases). So for Pioneer to prevail, it must escape this waiver's grasp.

Its path to doing so runs through a different clause in the Lease, the hazardous-materials clause. When interpreting a contract under Michigan law, a court ascertains the parties' intent by evaluating the language of the contract in accordance with its plain and ordinary meaning. *In re Smith Tr.*, 745 N.W.2d 754, 757–58 (Mich. 2008) ("If the contractual language is unambiguous, courts must interpret and enforce the contract as written . . . ." *Id.* at 758.). The Lease in question unambiguously instructs that Mercedes "shall not, at any time or for any reason, generate, store, handle, or otherwise deal with hazardous materials within the leased premises." R. 37-1, PageID#501. The Lease defines "hazardous materials" to include a wide array of "materials or substances" commonly recognized as dangerous when misused, including those "[c]ontaining gasoline, oil, diesel fuel or other petroleum products." *Id.*, PageID#501–02.

That excerpt should ring a bell. Recall that the fire here arose during an attempted transfer of gasoline between the testing vehicle and another car. One Mercedes employee stated that "gasoline leaked out" of the testing vehicle as it was about to be drained. R. 36-4, PageID#421. And Mercedes itself seemingly acknowledges that these events "resulted in" the fire. If true, Mercedes "handle[d] or otherwise deal[t] with . . . materials or substances . . . [c]ontaining gasoline" on the leased premises—a breach of contract that potentially enables Pioneer to defeat Mercedes's invocation of the waiver-of-subrogation clause. *See Rosenthal v. Triangle Dev. Co.*, 246 N.W. 182, 182 (Mich. 1933) ("[R]escission is permissible when there is failure to perform a substantial part of the contract or one of its essential items . . . ."); *Barton v. Gray*, 24 N.W. 638, 643 (Mich. 1885) ("[N]o one who causes or sanctions the breach of an agreement can . . . interpose it as a defense to an action upon the contract.").

Seeing things otherwise, Mercedes claims that this interpretation in essence reads out of the policy the prefatory phrase "materials or substances." *See Barton-Spencer v. Farm Bureau Life Ins.*, 892 N.W.2d 794, 798 (Mich. 2017) ("Courts should construe contracts so as to give effect to every word or phrase as far as practicable." (citation omitted)). Concluding that a breach has occurred from handling gasoline alone, without some non-gasoline "material[] or

substance[]," says Mercedes, would treat the phrase "materials or substances" as "mere surplusage."

How do we go about defining these terms? Because the Lease itself does not define "material" or "substance," we first consult plain meaning. *Meemic Ins. v. Jones*, 984 N.W.2d 57, 63 (Mich. 2022) ("We interpret contracts by giving plain meaning to the words and phrases used by the parties."). Both "materials" and "substances" refer to basic matter that forms other things. For example, the Oxford English Dictionary defines "material" as an "element[], constituent part[], or substance of something (whether physical or non-physical)." *Material*, 9 *Oxford English Dictionary* 465 (2d ed. 1989); *see also Twichel v. MIC Gen. Ins.*, 676 N.W.2d 616, 623 (Mich. 2004) ("The common usage of a nonlegal term is to be found in a lay dictionary."). It similarly defines "substance" as "[a] species of matter of a definite chemical composition." *Substance,* 17 *Oxford English Dictionary*, *supra*, at 65. Gasoline lands within both definitions. Indeed, the Lease contemplates that certain matter "[c]ontaining gasoline" could qualify as a material or substance. R. 37-1, PageID#501–02. It follows that the common ingredient in such matter—gasoline—must also qualify as a material or substance. *See Wilkie v. Auto-Owners Ins.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003) ("We read contracts as a whole, giving harmonious effect, if possible, to each word and phrase."). And recall that the phrase "materials or substances" is modified by "containing," which means "[t]o have as part *(or the whole)* of its contents or substance; to comprise, include." *Contain*, 3 *Oxford English Dictionary*, *supra*, at 807 (emphasis added). Putting all of this together, gasoline qualifies as a "material[] or substance[]" that itself "contain[s] gasoline."

Any contrived conclusion otherwise would not make sense in the context of the Lease. *See Henderson*, 596 N.W.2d at 195 (construing an insurance contract based on context). After all, ABA presumably listed gasoline in the hazardous materials clause due to its high flammability, regardless of any additives. *See* Agency for Toxic Substances & Disease Registry, *Public Health Statement Automotive Gasoline* 2 (June 1995), https://perma.cc/3KZ2-X7XT ("Gasoline is very flammable; it catches on fire quite easily, evaporates quickly, and forms explosive mixtures with air."). It would be odd to read the contract as permitting a swimming pool of pure gasoline while foreclosing a jerrycan filled with a half-gasoline, half-water mixture.

*See Knox v. Knox*, 59 N.W.2d 108, 120 (Mich. 1953) ("A contract will not be presumed to have imposed an absurd or impossible condition on one of the parties . . . ." (quotation omitted)).

As a final point, Mercedes emphasizes that the testing vehicle did not qualify as a material or substance under the hazardous-materials clause. In other words, Mercedes says, it did not "store" gasoline by simply having gasoline-fueled cars, such as the testing vehicle, on the premises. Perhaps so. Yet that assertion sidesteps the crux of Pioneer's argument—namely, that Mercedes breached the hazardous-materials clause by handling gasoline during the attempted transfer, not merely by storing gasoline inside the testing vehicle's tank. Whether parking a car qualifies as a breach of the Lease's prohibition against storing gasoline, we note, is a separate question than the one before us today: does siphoning gasoline out of a car on the premises qualify as a breach of the Lease's prohibition against handling gasoline? The siphoning purportedly involved employees draining gasoline out of the testing vehicle for its reuse in another vehicle. Or, said differently, employees potentially "handle[d]" and "deal[t] with . . . materials or substances . . . [c]ontaining gasoline" in contravention of the Lease. R. 37-1, PageID#501–02. That breach, if proven, would be a basis for Pioneer to recover irrespective of the Lease's waiver-of-subrogation clause.

\*     \*     \*     \*     \*

We accordingly reverse the district court's grant of summary judgment for Mercedes and remand for further proceedings.